## McIntyre and others *v.* Thompson and others.

*(Circuit Court, W. D. North Carolina. December Term, 1881.)*

1. REAL ESTATE—TITLE BY PRESCRIPTION.

A sheriff's deed is color of title, and continuous possession thereunder of the lands therein described for seven years, under known and visible boundaries, establishes title for the purposes of an action to recover land lying in the state of North Carolina, against everybody but the state; and title may be shown out of the state, if individuals have had possession and used such lands as their private property for 30 years, under known and visible lines and boundaries. As against the state, it is not necessary to show that such adverse possession was continuous, or that there was connection and privity between the holders.

2. COLOR OF TITLE.

Color of title is that which in appearance is title, but which in reality is no title. Even under a void and worthless deed, it is received as evidence of claim adverse to all the world, and mere notice of a better title will not prevent the operation of an adverse possession under it. It is a question of law to be determined by the court.

This is a civil action to recover land. The evidence and the legal questions presented in the argument are stated in the charge of the court.

*W. H. Bailey* and *Walker & Burwell*, for plaintiffs.

*Bynum & Grier* and *Jones & Johnston*, for defendants.

DICK, D. J., *(charging jury.)* In a long experience at the bar I have often observed that, in warmly-contested and protracted trials, many immaterial and irrelevant matters will find their way into the controversy. Such matters always tend to confuse and perplex,

and sometimes to prejudice, the minds of jurors. The strict rules of evidence rigidly enforced will not always prevent such a condition of things. The practice of the courts in this state allows great latitude to counsel in the management and argument of a cause, and I am not disposed to restrict or interfere with the well-recognized rights and privileges of attorneys. I know what are the rights and duties of the court, and I will now proceed to divest this trial of all matters which I regard as immaterial and irrelevant to the merits of the case, so that your minds may be directed to the material questions in controversy.

In the examination of Mr. Sumner, one of the witnesses for the plaintiffs, he stated that he was a duly-authorized agent in the prosecution of this action, and he had agreed with the plaintiffs to pay all costs and incidental expenses of the trial, and he was to receive one-half of the lands and damages that might be recovered.

After the argument had commenced, and one of the counsel for the plaintiffs had addressed the jury, one of the counsel for the defendants, in opening his argument, made a motion to dismiss the action, on the ground that it was tainted by a champertous contract between the plaintiffs and their agent. The motion was not then entertained by the court, as it was not made in apt time. The counsel then requested the court, in the charge to the jury, to define the crime of champerty, and charge the jury that the said agent was guilty of the said offence. The definition of the offence given by the learned counsel was correct.

At the common-law if a person officiously interfered in a suit, in which he had no present or prospective interest, to assist one of the parties against the other, with money or advice, without any authority of law, he was guilty of the crime of maintenance. Champerty is an aggravated species of maintenance. It is a bargain with the plaintiff or defendant (*campum partire*) to divide the land or other matter sued for between them if they prevail at law, the champertor undertaking to carry on the suit at his own expense. I have given the definition requested, but I decline to charge you as to the guilt of the agent, for the matter alleged is a crime at common law. I regard it as one of the highest duties of a judge not to pronounce a judgment or opinion as to the guilt of a person, even in the most trifling case, until he has had an opportunity in due course of law to make explanation or defence. Even if there should be a champertous consideration in the contract between the plaintiffs and their agent, it does not affect the merits of this action, as we are not called upon to enforce or invali-

date such contract. The agent is not a party of record, and the plaintiffs have a right to agree to pay him for his services as much as they deem proper. This court has no jurisdiction of the crime of champerty, and indictments for this offence are scarcely ever found in the practice of the courts. In the civil department of the law it is sometimes referred to as affecting contracts, and I believe that it is generally agreed, both in courts of law and equity, that any contract founded on a champertous consideration is illegal and void as being against public justice.

As I have already stated, this question has nothing to do with the merits of this case, and I have only referred to it because it was urged in the argument, and I wish to withdraw it entirely from your consideration.

There is another matter, which was much discussed by counsel while introducing evidence, which I desire now to eliminate from the case. The plaintiffs claim title as the heirs at law of Henry Yates and Archibald McIntyre, who formerly carried on the business of mining under the firm name of Yates & McIntyre. For the purpose of proving their title, the plaintiffs proposed to show that the defendants claimed under Yates & McIntyre, and under a rule of law cannot dispute their title. There is a well-established rule of law in actions for the recovery of land that where both plaintiff and defendant claim title under the same person, neither can deny the title of him under whom both claim. This is not strictly an estoppel, but a rule of the court founded in justice and convenience. The plaintiff offered in evidence a deed executed by a confederate receiver to one L. C. Thompson, showing that the land in controversy was sold under a decree of a court of the confederate states, condemning the land as the property of the heirs at law of Yates & McIntyre, who were residents of the United States, and alien enemies. At the time of the condemnation and sale in November, 1862, the government of the confederate states was a *de facto* government, exercising belligerent rights, and had instituted proceedings against said land to condemn and sell the same as forfeited to said government. The proceedings for confiscation were against the lands and not the owners, and the purchaser of the lands claimed not their title, but one paramount, derived from the sovereign in whom the title had become vested by operation of law.

If the confederate government had been successful in establishing itself as a government *de jure,* the title of the purchaser would have been complete. At the time he made the purchase he was not bound

to look beyond the decree of a court having jurisdiction of the subject-matter, for the exercise of jurisdiction warrants the presumption in favor of a purchaser that the facts necessary to be proved to confer jurisdiction were proved. When L. C. Thompson purchased he acquired a good title, and he had title when he conveyed to the present defendants in 1863; but the proceedings for condemnation and sale, and the title of the purchasers, all became void on the downfall of the *de facto* government. I think the rule of law heretofore stated as to parties in an action for the recovery of land claiming from the same source of title does not apply. The defendants do not claim from the ancestors of the plaintiff, but such title as they once had was derived from the confederate government, and on the downfall of that government they became mere occupants of the land under color of title. As to the possession and color of title of the defendants I will make extended reference hereafter, when I come to consider the issue on this subject.

There is still another matter which I wish to withdraw from your consideration. In 1865 this state was under the military control of the United States. One of the defendants being in possession at that time of the lands in controversy, and being apprehensive that he might be disturbed or dispossessed by the military authority, went to a person who, before the war, had been the agent of some of the heirs of Yates & McIntyre, and proposed to take a lease from him to secure possession against military interference. This person had no authority to act in the matter, as his power of attorney had become void by the death of the grantors. The lease which was executed was not intended by the parties as a *bona fide* lease, but was for the purposes stated, and no effort was ever made to collect the sums agreed upon in said lease. The lease was void, as the pretended lessor had no authority to make it, and it did not have the effect of establishing the relation of landlord and tenant between the defendant and the heirs at law of Yates & McIntyre. You are, therefore, charged not to consider this matter in making up your verdict.

In an action like this a plaintiff can only recover upon the strength of his own title. For the purpose of showing title the plaintiffs introduced a deed from Ward, the sheriff of Gaston county, who, under an execution at law, had sold the lands and executed said deed to the purchasers, Yates & McIntyre, dated September, 1835. The plaintiffs introduced no other deeds showing a chain of title back to the state. For the purpose of showing title out of the state they introduced evidence tending to prove that the lands were occupied as far

back as 1817, by persons who were claiming and using the same as owners, and that such occupation and use were continued up to 1835, when the lands were purchased at sheriff's sale by their ancestors. They also introduced evidence tending to show that such purchasers and their heirs, by themselves, their tenants, and agents, were in possession of said lands until 1861, the commencement of the late civil war.

On the first issue of facts submitted to you under the direction of the court, I charge you that if you are satisfied from the evidence that the plaintiffs, or those under whom they claim, were at any time in the actual and continuous possession of the lands by themselves, or their tenants and agents, for the period of 30 years, under well-known and visible lines and boundaries, you will find this issue in favor of the plaintiffs. In case of such possession it is not necessary to show "color of title." If you find this issue in favor of the plaintiffs, such finding will establish their title, and you need not consider the second and third issues. If you find this first issue against the plaintiffs, then you will proceed to consider the second issue submitted.

Upon this second issue I charge you that the sheriff's deed to Yates & McIntyre was color of title, and if you are satisfied from the evidence that the plaintiffs, or those under whom they claim, had seven years' continuous possession of said lands under known and visible boundaries, then they establish a title against everybody except the state; and title may be shown out of the state if individuals have had possession of the same for 30 years under known and visible lines and boundaries, using them as private property; and the seven years' possession under color of title may be computed as a part of the 30 years' adverse possession against the state. Such occupation and use raise a presumption of a grant. It is not necessary to show that such adverse possession was continuous, or that there was connection and privity between the holders.

The general facts that the state or its agents allowed first one and then another to occupy and use the lands as private property for so long a time, raises the presumption that the state had granted the lands to some one. It is not necessary to fix upon any one as grantee so that the title is out of the state. The presumption of a grant from long possession is not based upon the idea that one actually issued, but because public policy and the quieting of titles make it necessary for the courts to act upon that presumption. You will consider the evidence and apply it to the principles of law which I

have announced as to this issue. If you find this issue against the plaintiffs, then you will proceed to consider the third issue.

If the evidence on this third issue satisfies you that the plaintiffs, or those under whom they claim, had actual and continuous possession of the lands under known and visible lines and boundaries, and under color of said sheriff's deed, for the period of 21 years, then you will find this issue for the plaintiffs, and such finding will establish their title.

If you find any of the three foregoing issues in favor of the plaintiffs, you will then proceed to consider the evidence in the fourth issue, which relates to the title of the defendants.

The defendant Edward Thompson is a mere tenant in possession, claiming for the defendant Jones, who holds the legal title as trustee for the defendants A. B. Magruder and wife. These last-named defendants are the real parties in interest. A. B. Magruder, with the consent of said trustee, made the purchase of said lands from L. C. Thompson, in the fall of 1863, with money arising from the separate estate of his wife, and he alleges that he has had control of the property since the date of the purchase. I will hereafter speak of Magruder as the real defendant. Under the deed from L. C. Thompson he went into possession in the fall of 1863, and remained in actual possession until the fall of 1865. I charge you this said deed was color of title. What is "color of title," is a question of law to be determined by the court.

There was in former times some difficulty in giving an exact signification to the phrase, but I believe that the courts now agree to the definition that "'color of title' is that which in appearance is title, but which in reality is no title." Color of title, even under a void and worthless deed, has always been received as evidence that the person in possession claims adversely to all the world, and mere notice of a better title in some other person will not prevent the operation of an adverse possession under such color of title. I have already stated that the title conveyed by the confederate receiver to L. C. Thompson, and conveyed by him to the trustee of the defendant Magruder, was invalidated by the downfall of the confederate government. I am of opinion that the deed from Thompson to the trustee of the defendant Magruder is color of title. The sole question of fact for you to determine on this issue is, has Magruder acquired a complete title by an adverse possession of said lands, under known and visible lines and boundaries, for the period of seven years? The statute of limitations was suspended in this state from the twentieth of May,

1861, until the first of January, 1870, so that Magruder's adverse possession must have been a continuous one from January 1, 1870, to perfect his title, as this action was commenced in September, 1877.

As both plaintiffs and defendants claim under color of title and the statute of limitations, I will say a few words as to the nature and policy of such statutes. "They are now regarded favorably in all courts of justice. They are statutes of repose. Usually they are founded in a wise and salutary policy, and promote the ends of justice." They are dictated mainly by two considerations,—one, that it is public policy to discourage stale claims; and the other, that it is not to be presumed that a person having a right would delay in asserting it for a long period in full view of another's wrongful interference with it. A title acquired by operation of the statute of limitations is as much deserving of the favorable consideration of a court of justice as any other kind of title.

In charging a jury I do not generally recapitulate the testimony offered by the parties, but leave such matters to the recollection of the jury, refreshed and enlightened by the argument of counsel. As to the nature of Magruder's possession I must state some of the testimony in order to show the application of certain principles of law. In the fall of 1865, Magruder quit the actual possession of the lands and rented them to Wesley Mincy for the year 1866. He did not as tenant cultivate the lands, but went off to superintend a mill, leaving his family in possession. Moses Mincy, by permission of his son Wesley, entered on the lands and cultivated a crop, and after that year he was in the sole possession of the lands for several years. There is some conflict in the testimony as to whether Moses Mincy paid rent to the agent of Magruder for the years 1866, 1867, 1868. In 1869 he went to an agent of Magruder and offered to pay rent. The agent declined to receive the rent, saying he was no longer Magruder's agent. Moses Mincy, then acting under some advice which he had received, moved off of the lands and moved back the same day, and remained in possession until the fall of 1872, and paid rent to a person professing to act as agent for the heirs of Yates & McIntyre.

If you are satisfied from the evidence that Moses Mincy paid rent to the agent of Magruder for the years 1866, 1867, and 1868, this would establish the relation of landlord and tenant. He entered under the license of his son Wesley, who was a tenant of Magruder, and although there was no contract between Moses Mincy and Magruder, yet if he paid rent during his possession to the duly-authorized agent

of Magruder this would create a tenancy from year to year. If a person enter lands as a tenant of another, or after entry has become tenant by the payment of rent, he is estopped from asserting any title in another until he has restored possession to his landlord. The possession of the tenant is the possession of the landlord, and so long as the possession subsists so long does the relation of landlord and tenant exist. This doctrine of estoppel has been applied very beneficially to the relation of landlord and tenant, and is intended to insure honesty and protect the landlord against the faithlessness of the tenant. The refusal of the agent of Magruder to receive rent in 1869 did not destroy the tenancy. It could only be terminated by the surrender of the possession to the landlord or his authorized agent. The surrender must be real and not colorable. The mere departure of the tenant one day, with the intention of returning and going back the same day, was by no means sufficient. This doctrine of estoppel between landlord and tenant does not apply to the latter when he has been evicted, and subsequently let into possession by a new and distinct title under another landlord.

It was insisted by the counsel for plaintiffs that if a tenant is threatened with eviction by a suit by a person claiming a paramount title the tenant may attorn to such claimant. The case in 9 Wallace, (*Merryman* v. *Bourne*, 9 Wall. 592,) to which the counsel referred, seems to sustain such a position, but there is no evidence to raise the question.

It is very material to ascertain whose tenant Mincy was during 1870–71–72. He did not pay rent to Magruder, but paid rent to a person claiming to be an agent of the heirs at law of Yates & McIntyre. The declarations of a person in possession of lands are ordinarily admissible in evidence to establish the relation of landlord and tenant; but if you are satisfied that Moses Mincy was the tenant of Magruder previous to 1870, he could not put an end to such tenancy by declaring that he held under another. He must have completely surrendered the premises to his former landlord before he could attorn to another claimant. If Moses Mincy was the tenant of Magruder previous to 1870, the tenancy continued until the fall of 1872, when Moses went out and Wesley went into possession as the tenant of Magruder. If you are satisfied that Magruder was in possession of the lands in controversy, through his tenants, from January 1, 1870, until the commencement of the suit in September, 1877, then he has acquired a title under the statute of limitations and he is entitled to your ver-

dicts, unless some of the plaintiffs were during such time under the disabilities of infancy or coverture, as the statute did not run against such claimants.

The evidence tending to show that the plaintiffs are the heirs at law of Henry Yates and Archibald McIntyre, and their condition as to coverture and infancy, is not controverted, but is somewhat complicated, and the counsel on both sides have agreed that the court may pass upon and determine these questions, and the finding of the court shall be your verdict on the fifth issue.

The sixth issue involves the amount of damages which should be assessed if the plaintiffs are entitled to recover the land. The counsel have agreed that you shall assess the damages for one year, and the court shall determine the number of years for which the plaintiff shall recover. You have heard the evidence as to the condition of the lands when the defendants went into possession, and the improvements which were made increasing the rental value more than fourfold. You should make a fair allowance out of the rents and profits for the permanent improvements made by the defendants, taking into consideration all the circumstances. I cannot lay down any certain and positive rule as to the measure of damages in this case. Most of you are farmers, and I feel sure that from the evidence you can come to a fair and just conclusion, aided by your knowledge and experience in such matters.

For four days you have patiently listened to the evidence and the elaborate comments of counsel, and I have heard and considered the learned legal arguments and the authorities cited, and I have endeavored to state the principles of law involved, and I hope you may now be able to find a just verdict determining the rights of the parties.