KAMMERER *v.* MORLOCK.

1. EXECUTORS AND ADMINISTRATORS — SALE OF REAL ESTATE — FRAUD.

Where a sale of real estate by an administrator under order of the probate court was properly advertised, and many bidders were present, and the sale was confirmed by the court, the fact that property which had been appraised at $1,100 was purchased by the administrator's stepfather for $900, and that 17 months thereafter the purchaser conveyed to the administrator, and that at the same sale other property, appraised at $700, was sold for $525, was not sufficient evidence of fraud to warrant setting aside the sales.

2. SAME — APPOINTMENT — NOTICE OF HEARING — DISCREPANCY IN DATES — JURISDICTIONAL DEFECT.

Where the order and notice of hearing on a petition for the appointment of an administrator *de bonis non* fixed the time for the hearing as "Monday, the 9th day of August next," and the 9th day of August was not Monday, but Friday, and the order appointing the administrator was made on Monday, August 5th, the discrepancy in the date was fatal to the jurisdiction of the court, and hence all subsequent orders licensing and confirming sales of real estate by such administrator were void.

3. SAME — BILL TO SET ASIDE SALE — MINOR HEIRS — LIMITATIONS.

3 Comp. Laws 1897, § 9128, provides that a suit by a minor heir to set aside an administrator's sale of real estate must be brought within five years after he becomes of age. *Held*, that, where a sale was void because of the illegal appointment of the administrator by whom it was made, a bill to set aside such sale could be maintained only by those heirs of the deceased who had not acquiesced in such sale for more than five years after arriving at their majority.

Appeal from Berrien; Coolidge, J.   Submitted October 5, 1900.   Decided December 4, 1900.

Bill by Mary Kammerer and others against Frank Morlock and others to set aside an administrator's sale. From a decree dismissing the bill, complainants appeal. Reversed.

*George W. Bridgman* and *Edward Bacon*, for complainants.

*O'Hara & O'Hara*, for defendants Morlock.

*N. A. Hamilton*, for other defendants.

LONG, J.   This bill was filed to set aside certain administrator's sales of two parcels of real estate in the city of St. Joseph.   One parcel is designated in the bill as the "Dwelling-House Property," and the other as the "Boarding-House Property."   They both belonged to Peter Breidinger at the time of his death, June 28, 1874. He left surviving him his widow and the six complainants, his children and heirs at law, who were born, respectively, as follows: Mary Breidinger (now Kammerer), September 14, 1861; Sophia Breidinger (now Weist), July 22, 1865; Peter Breidinger, May 3, 1867; Lizzie Breidinger (now Lorenz), February 15, 1869; Frank Breidinger, April 3, 1871; Nicholas Breidinger, March 5, 1874.   Frank Morlock, one of the defendants, was appointed administrator of the estate, July 14, 1874.   He filed his inventory and appraisement of said estate, showing the dwelling-house property appraised at $1,000, and the boarding-house property at $1,500.   There was certain other real estate, which it is not necessary here to state.   The personalty was appraised at $245.   Settlement was had in 1876, before the probate court, the account showing payment to outside creditors of claims originating before the death of Peter Breidinger amounting to $1,500, and the account closes with the statement: "Balance due administrator, $68.46; due creditors from estate, $800."

The widow and her children continued in possession of the two properties until her death, in June, 1878.    In July of that year, Frank Morlock filed a petition to be appointed administrator *de bonis non* of the Peter Breidinger estate, and the following month was duly appointed as administrator *de bonis non*.    Appraisers were appointed, as well as commissioners to audit claims.    The appraisers filed their inventory, stating the valuation of the boarding-house property to be $1,100, and the dwelling-house property to be $700, and the personal property $111.50.    In August, 1878, Morlock filed in the probate court his petition for license to sell both parcels of real estate, stating that the amount due to creditors was $1,300.    In September, Conrad Kammerer, on petition of Morlock, was appointed guardian of the children.    The two pieces of property were sold January 11, 1879, upon an order of the probate court, for the purpose of payment of the debts. The dwelling-house property, according to the report of the administrator, was sold for $525, and the boarding-house property for $900; the sale of the boarding-house property being for one-third of the purchase price in cash, and the remainder secured by mortgage on the premises sold, payment to be made within two years from date of sale, with interest at 7 per cent.    A report made by the commissioners on claims was filed in February, 1879, showing claims allowed amounting to $1,090.21.    In May, 1881, Kammerer resigned his guardianship of the children, and defendant Morlock was appointed in his place, although it is claimed he never took the oath or filed any bond or made any report as such guardian; but it is claimed by the defendant that he went on paying the debts as administrator, and as guardian of the children paid to Mary and Sophia $97 each, and in May, 1888, paid two more of the children $103.75 each, and took their receipts in full for their share of the estate.

It appears from the testimony that Morlock, as administrator, sold the dwelling-house property to Christian Melsheimer, and the boarding-house property to his step-

father, Christian Stein. In June, 1880, Stein and wife conveyed their part of the property to defendant Morlock. It is claimed that this sale to Stein was a sham, and made by the administrator for the purpose of acquiring title in that property to himself. As to the sale of the dwelling-house property, it is claimed that was fraudulent, in that it was sold for less than half its value. The court below found against these contentions; and, we think, very properly. There is no evidence in the record which would justify us in setting aside the sales on the ground of fraud. The dwelling-house property, which sold for $525, was inventoried at $700. The boarding-house property, which sold for $900, was inventoried at $1,100. The sale was advertised, and many bidders were present, among them relatives of the Breidinger family. One Nicholas Kibler, grandfather of complainants, made a bid on the boarding-house property, but decided not to take it, and paid $100 to be released from his bid; and, so far as this record shows, defendant Morlock has never claimed any interest in that property since.

It is claimed, however, that Stein was without means to pay his mortgage. The record shows that he held the property until June, 1880, when he deeded it to Morlock. According to the account of Morlock, in the May previous he had received on the Stein mortgage $655.65, and the mortgage was discharged May 31, 1880. The sale made by Morlock of these two pieces of property was duly reported to the probate court, and confirmed by that court, in February, 1879.

It is further claimed by complainants that the order appointing Morlock administrator *de bonis non* is void for want of publication and notice required by 3 Comp. Laws 1897, § 9340; that the order and notice of hearing for the appointment fixed the time for hearing as August 9, 1878; that the order read that the hearing was to be had on "Monday, the 9th day of August next," while Monday was not the 9th day of August, but the 5th day; that this was fatal to the jurisdiction of the probate court;

and that all subsequent orders licensing the sale of real estate, and confirming the report of such sales, were void for that reason. The original notice of hearing was for Monday, which was August 5th, and the hearing was presumably had on that day. This was not the date fixed in the order for the hearing, and an appointment could not be made on the 5th, as the order stated that the hearing would take place on the 9th. We think the discrepancy in the date was fatal to the jurisdiction of the probate court, and that all subsequent orders licensing the sale of real estate, and confirming the report of such sales, were void. *Gillett* v. *Needham*, 37 Mich. 143. It follows that the sales of those two parcels must be set aside.

There is not sufficient proof in this record by which this court can enter upon an accounting between the parties. The decree below will be reversed, and the case referred back to the court below, where an accounting may be had. It appears that but two of the complainants, to wit, Frank and Nicholas Breidinger, can take advantage of this error, and that they alone can maintain this bill. Section 6075, 2 How. Stat.; also section 9128, 3 Comp. Laws 1897. The other complainants had rested upon their rights more than five years after becoming of age. Therefore the sales can be opened only in the interests of these two. The accounting will be had on the basis of their interest in the rents and profits of the property. It has been seen, however, that the administrator has paid, under the orders of the probate court, debts against the estate, his own debt included. It would be inequitable to say that these complainants should have their shares in the property, together with rents and profits, unless it be also provided that the administrator be repaid the amount of moneys, with interest thereon, which he has paid out upon the debts of the estate. It is therefore decreed accordingly. These two complainants will recover their costs of this court.

The other Justices concurred.