**MEHARD et al., Adm'rs, v. LITTLE.** L

No. 9910—Opinion Filed March 8, 1921.

(Syllabus.)

**1. Adverse Possession—Color of Title—Conveyances—Effect as Bar.**

Whenever an instrument, by apt words of transfer from grantor to grantee, whether such grantor act under the authority of judicial proceedings or otherwise, in form passes what purports to be the title, it gives color of title, even if invalid, and possession under it for the period prescribed by statute bars the right of the true owners as effectively as possession under the most perfect title

**2. Vendor and Purchaser—Rights of Bona Fide Purchasers — Effect of Resulting Trust.**

When a transfer of real property is made to one person, and the consideration therefor is paid by or for another, a trust is presumed to result in favor of the person by or for whom such payment is made, but no implied or resulting trust can prejudice the rights of a purchaser or incumbrancer of real property, for value and without notice of the trust.

**3. Appeal and Error—Equity Case—Conclusiveness of Findings.**

In a case of purely equitable cognizance, the findings of the trial court will not be disturbed on appeal unless the same are clearly against the weight of the evidence.

**4. Same—Quieting Title—Judgment.**

Record examined; held, that the findings and conclusions of the trial court are not clearly against the weight of the evidence, and the judgment is affirmed.

Error from District Court, Nowata County; W. J. Campbell, Judge.

Action by. A. D. Little against S. S. Mehard and Robert Law, Jr., administrators of the estate of T. N. Barnsdall, to quiet title. Judgment for plaintiff, and defendants bring error. Affirmed.

W. A. Chase, A. B. Campbell, J. I. Howard, and A. M. Beets, for plaintiffs in error.

J. E. Bennett and Schwabe, Raymond & Wedell, for defendant in error.

JOHNSON, J. This is an appeal from the district court of Nowata county; W: J. Campbell, Judge.

A. D. Little commenced this action in the court below against T. N. Barnsdall, as defendant, to quiet title to the S. ½ of the S. E. ¼ of section 34, Tp. 26 N., R. 15 E., in Nowata county, and as a cause of action, and as a basis for his claim, and his right to have the same quieted, the plaintiff alleged that this land was originally allotted to one Judy Melton and that Judy Melton died when about four years of age, leaving as her sole and surviving heir her mother, Victoria Wilson, and that thereafter, and on or about August 15, 1909, Victoria Wilson conveyed this land to Richard C. Adams, and that thereafter, and on April 28, 1909, Victoria Wilson executed a deed to Charles Heady covering said land, and that thereafter, and on August 17, 1909, Charles Heady conveyed by warranty deed all of his interests in the land to J. B. Heady. That thereafter, on January 7, 1910, the sheriff of Nowata county, on an execution issued out of the office of the district court and sale had thereon and confirmation of said sale in a certain

action wherein J. B. Heady was plaintiff and Richard C. Adams was defendant, did convey the said described real estate to J. B. Heady, the purchaser at said sale, of all the right, title, and interest of Richard C. Adams to said land, and that thereafter, and on January 8, 1910, said J. B. Heady and his wife executed a warranty deed to the said A. D. Little, plaintiff.

The plaintiff further alleged that he was the owner of said land and that he had been in the open, hostile, notorious, and adverse possession under claim of title more than five years. He then alleges that, notwithstanding this adverse possession under claim of title for five years, the said defendant Richard C. Adams did, by quitclaim deed, attempt to convey title and interest in said premises to the defendant in this cause, T. N. Barnsdall, under date of March 23, 1914, and asserts that T. N. Barnsdall is claiming some right, title, and interest in said premises adverse to the plaintiff, and alleges that said deed is void for the reason that said Adams had no title or interest in said premises on said March 23, 1914, and said defendant Barnsdall acquired no title or interest, but that said deed is a cloud on plaintiff's title.

He alleges as a further ground that the deed from Adams to Barnsdall was void for the reason that Adams had not been in possession of said property for more than a year and had not taken the rents and profits therefrom, but that the plaintiff had received all the rents and profits and had been in possession of said premises for more than five years.

The plaintiff in the court below further prayed for damages against the defendant by reason of the cloud of his title, but the court below having disallowed the same and no cross-appeal having been filed, that phase of the case becomes immaterial in this court.

Plaintiff attached to his petition copies of the various instruments, muniments of title, as Exhibits A to H, both inclusive.

T. N. Barnsdall being a nonresident of the state, service was had upon him by publication, but thereafter, and on October 8, 1915, he appeared and filed an answer in the case, in which he admits that Judy Melton, the allottee of the lands in controversy, was an enrolled freedman citizen of the Cherokee Nation; admits her death; admits her allotment of the land in controversy and that she died when she was four years of age and her mother, Victoria Wilson, was her sole heir; admits that on August 17, 1905, Victoria Wilson executed a deed to Richard C.

Adams, which was filed for record August 25, 1905; admits that the execution was issued to the sheriff of Nowata county in the case of J. B. Heady v. Richard C. Adams; but denies the validity of the deed; denies that it transferred any right or interest in the land to the purchaser, J. B. Heady; denies that any valid judgment was ever rendered or that any valid execution was issued upon said judgment or that any execution was levied on the lands or any valid sale made thereof to J. B. Heady, or anyone else by reason of the execution. The answer further admits the transfer of the property on March 23, 1914, from Richard C. Adams to the defendant, Barnsdall, by quitclaim deed. The answer further alleges that the land originally bought from Victoria Wilson was bought with the money of T. N. Barnsdall and was at all times the property of T. N. Barnsdall, and that the record title to said land was in Richard C. Adams, who held it in trust for T. N. Barnsdall, who was at all times after the execution of the deed on August 17, 1905, by Victoria Wilson to Richard C. Adams, the owner of said land; and prays that plaintiff take nothing by said action.

The plaintiff in the court below filed a reply to this answer in the form of a general denial of all new matter set forth, and he alleges further that he purchased such real estate more than five years prior to the filing of the action for value, without notice or knowledge or pretended claim or title of the defendant, and realleges that he has been in the open, adverse, hostile, and notorious possession for more than five years under claim of title as set forth in his petition and that the muniments of title have been on file with the register of deeds of Nowata county for more than five years prior to the commencement of this action. Further replying, he alleges that the defendant has been guilty of laches in the assertion of any rights or title to said premises, in that he has permitted the pretended trustee, Richard C. Adams, to retain his alleged title for more than ten years before asserting the existence of said pretended trusteeship or asserting any right or title to the said lands, and that any right or title which the defendant might have is now unenforceable and is barred by the neglect and the delay of the defendant and is barred by the statute of limitations.

Thereafter, the defendant, T. N. Barnsdall, filed a cross-petition in said action, wherein he alleges that he is the legal and equitable owner in fee simple of the premises in controversy; alleges that he derived his title in the manner set up in the petition of the plaintiff and deraigned his title through the various conveyances from Victoria Wilson to Richard C. Adams and from Richard C. Adams to himself. He then alleges that the transfer of said lands from Richard C. Adams was pursuant to an agreement between the cross-petitioner and Adams to the effect that said conveyances should be for the use and benefit of the cross-petitioner, Barnsdall, and that the funds used by Adams in the purchase of said land were the funds of the cross-petitioner, Barnsdall, and thereafter that Adams held said lands for the use and benefit of Barnsdall, and that the execution of the deed from Adams to Barnsdall on the 23rd of March, 1914, was for the purpose of carrying out the agreement between them by reason of the cross-petitioner, Barnsdall, being the real owner of said land, and Adams simply holding it in trust for his use and benefit

He alleges that the cross-petitioner, Barnsdall, was at all times the owner of said lands after the 17th day of August, 1905.

The cross-petitioner further alleges that all of the alleged title claimed by the plaintiff, Little, as pleaded in his petition, was based upon Exhibit F, being his sheriff's deed to said property, but alleges that the same did not convey any title for the reason that the execution was on a judgment rendered against Richard C. Adams when no service was had upon him, and that the judgment was void and the sheriff's deed under the execution based on the judgment was absolutely void and did not convey title from Richard C. Adams to J. B. Heady, and that the said plaintiff has no right, title, or interest in said property by reason thereof.

The cross-petitioner, Barnsdall, further alleges that the claim of the plaintiff, Little, is a cloud on his title and that the deeds and purported conveyances under which he asserts title should be canceled and held for naught. As a further and second cause of action, the cross-petitioner alleges ownership in the property and alleges that the plaintiff has been in possession thereof for six years and collected the rents and profits from said property, all of the value of $750; and that the cross-petitioner has been damaged by reason of the withholding of the possession of said premises in the sum of $500, and prays damages in the sum of $1,250.

The plaintiff in the case below filed an answer to this cross-petition and he makes the allegations of his original petition and reply a part of the answer, followed by a general denial, except such as were theretofore admitted; and as affirmative defense pleads that on the — day of January, 1910, he was

an innocent purchaser for value of the land in question without notice of the pretended claims of the cross-petitioner, Barnsdall, and he had no notice or knowledge, actual or constructive, that Barnsdall had, or claimed, any right, title, or interest in the premises.

To this answer the defendant, Barnsdall, filed a reply in the form of a general denial. After the action was commenced, the original defendant in the action, T. N. Barnsdall, died, and upon appropriate action had, the court made an order reviving the action in the name of S. S. Mehard and Robert Law Jr., administrators of the estate of the deceased.

. The cause came on for trial on the 17th day of October, 1917, and a jury was waived and the cause submitted to the court.

The evidence, without dispute, discloses that Richard C. Adams was, at all times during the progress of any of these proceedings, a nonresident of the state of Oklahoma; that on April 20, 1909, J. B. Heady filed suit for money demand against Richard C. Adams in the county court of Nowata county, and caused an order of attachment to be issued out of that court and the land in controversy in this action attached. That on April 30, 1909, the summons was returned without service, and, on May 6, 1909, affidavit to obtain service by publication was filed and that service by publication was had in a newspaper in the town of Nowata, and that thereafter, and on July 6, 1909, personal judgment was rendered against the defendant in this action in the sum of $401.47 and the order of attachment was ordered sustained.

Thereafter a transcript of this judgment was filed in the district court, and thereafter an order of sale was issued out of the district court directed to the sheriff of Nowata county, commanding him to collect said judgment out of the property of Richard C. Adams, if any could be found in that county, said execution dated August 9, 1909. This execution was returned showing the levy and sale of the property in controversy in this action to J. B. Heady for the sum of $220, and thereafter, and on the 4th day of January, 1910, the district court of Nowata county confirmed said sale, and on the 7th day of January, 1910, the sheriff executed a deed to J. B. Heady, and on the 8th day of January, or the following day, J. B. Heady and wife executed a warranty deed attempting to convey the property to A. D. Little, the plaintiff in the case.

The findings of the court were as follows:

"That as a matter of fact the judgment rendered in the county court of Nowata county, Oklahoma, in which J. B. Heady was plaintiff and Richard C. Adams was defendant, was rendered without personal service on Richard C. Adams and was rendered as a personal judgment, and that the same is void.

"That the execution issued was regular and valid upon its face as an execution, but that it was void for the reason that the judgment upon which it was issued was void.

"That the deed executed by the sheriff was regular upon its face and shows no facts upon its face that would render the deed in question void, but the court further finds that the deed in question was ineffective to pass the title to the real estate to the purchaser at the sheriff's sale under the execution and to the grantee named in the deed.

"The court further holds that the deed by the sheriff made pursuant to the order of the district court directing its execution and delivery by the sheriff and confirming the sale made by the sheriff under the execution which was issued out of the district court is sufficient in law to put into operation the statute of limitation.

"The court further finds in this case from the testimony that the plaintiff and those under whom he claims have adverse, exclusive, and notorious possession of the lands involved herein, for a period of five years and more prior to the commencement of this action.

"The court is of the opinion in this case that the plaintiff, having had possession under the sheriff's deed executed and delivered pursuant to an order of the court by the sheriff of this county under a sale and under an execution, which has been introduced in evidence, issued by this court, for a period of more than five years prior to the commencement of this action, which possession was sufficient under the law to constitute it open, adverse, exclusive, and notorious, has title to the lands in question by prescription, by virtue of the provisions of the statute."

And the court thereafter rendered a judgment in favor of the plaintiff quieting his title to said lands, to reverse which this proceeding in error has been regularly commenced.

Plaintiffs in error make 13 specifications of error in their petition, concerning which they say in their brief:

. "There being only one vital question at issue in this cause for the court to determine, the assignments of error may all be grouped under one head, that is to say, that the district court of Nowata county erred, and as a matter of law, in rendering judgment in favor of the plaintiff and against the defendants upon the pleadings and evidence in this cause and in holding that the sheriff's deed of January 7, 1910, to J. B. Heady covering

the lands involved in this action was sufficiently valid to start the statute of limitations and in holding that the statute of limitations were in favor of the plaintiff, A. D. Little, and against the defendants below, plaintiffs in error here, and in not holding that the entire proceedings in the case of J. B. Heady v. Richard C. Adams, including the judgment, execution, and return thereon, and the sheriff's deed, were absolutely void."

Rev. Laws 1910, provide as follows:

"6748. Prescription. Occupancy for the period prescribed by civil procedure, or any law of this state as sufficient to bar an action for the recovery of the property, confers a title thereto, denominated a title by prescription, which is sufficient against all."

"4655. Limitation of Real Actions. Actions for the recovery of real property, or for the determination of any adverse right or interest therein, can only be brought within the periods hereinafter prescribed, after the cause of action shall have accrued, and at no time thereafter;

"First. An action for the recovery of real property sold on execution, brought by the execution debtor, his heirs, or any person claiming under him, by title acquired after the date of the judgment, within five years after the date of the recording of the deed made in pursuance of the sale.

"Second. An action for the recovery of real property sold by executors, administrators or guardians, upon an order or judgment of a court directing such sale, brought by the heirs or devisees of the deceased person, or the ward or his guardian, or any person claiming under any or either of them, by the title acquired after the date of the judgment or order, within five years after the date of the recording of the deed made in pursuance of the sale."

The evidence showed without dispute that the legal title to the land involved was deraigned by a regular chain of title from the sovereignty of the soil to R. C. Adams; that Adams' deed was dated August 17, 1905, and filed for record August 25, 1905; that J. B. Heady purchased the land at judicial sale and that the sheriff's deed to him was confirmed by the court and was duly recorded on January 8, 1910, on which date J. B. Heady, joined by his wife, Ella Heady, conveyed the land to plaintiff, A. D. Little, his deed being recorded February 1, 1910, and that the plaintiff was a purchaser for value and had ever since been in the open, hostile, notorious, and adverse possession, claiming the title to said land, and that Adams, on March, 23, 1914, conveyed the land by quitclaim deed to T. N. Barnsdall and that on February 3, 1915, this action to quiet title was commenced by the plaintiff, and that at that time the plaintiff's possession of the land had been continuous and uninterrupted

ever since his purchase at sheriff's sale as aforesaid.

The answer and cross-petition of the defendant, T. N. Barnsdall, was filed herein November 18, 1916.

The contention of defendant in error, as stated by his counsel in their brief, is that the sheriff's deed, being regular on its face, while it did not create title in itself, constituted color of title, which, aided by the statute of limitations, developed into title by prescription, which was a valid title, and that therefore the judgment of the trial court should be sustained.

It will be observed that subdivisions 1 and 2 of section 4655, supra, prescribe the same period of limitation; the first, however, applies to sheriff's sales, and the second to executors' or guardians' sales.

In the case of Dodson v. Middleton, 38 Okla. 763, 135 Pac. 368, the minor's land was sold by her guardian and guardian's deed delivered and recorded, and more than five years after recording of the deed and more than two years after said minor's majority she brought a suit to set aside the guardian's deed on the ground that the sale proceedings were void, and the court said that the case "presents the following questions of law only: Does the statute of limitations of this state run against a void guardian's deed?" In discussing this question the court said:

"The disability of defendant Hannah Middleton had been removed for more than two years prior to the institution of her action, and, if a guardian's deed made in pursuance of a void judgment of a court ordering a sale is sufficient to bring into operation the foregoing statute of limitations, plaintiff's defense as to her is established, and the trial court, to that extent, committed error. Similar statutes are to be found in Kansas and California, in each of which jurisdictions it has been held that a void sale by an administrator or guardian is sufficient to set in operation the statute. O'Keefe et al. v. Behrens et al., 73 Kan. 369, 85 Pac. 555, 8 L. R. A. (N. S.) 354, 9 Ann. Cas. 867; Stewart et al. v. Rea et al., 74 Kan. 868, 87 Pac. 1150; Mowry v. Howard et al., 65 Kan. 862, 70 Pac. 863; Harlan et al. v. Peck et al., 33 Cal. 515, 91 Am. Dec. 653; Ganahl v. Soher, 68 Cal. 95, 8 Pac. 650; Reed v. Ring, 93 Cal. 96, 28 Pac. 851.

"There is a conflict among the authorities upon this question, most of which may be found collected in the note to O'Keefe v. Behrens et al., supra, 8 L. R. A. (N. S.) 354. Among the numerous cases supporting this doctrine, are the following: Morgan et al. v. Hazlehurst Lodge et al., 53 Miss. 665; McMichael et al. v. Craig et al., 105 Ala. 382, 16 South. 883; Griffin v. Dunn, 79 Ark. 408,

96 S. W. 191; Brown v. Maher et al., 68 Ind. 14; White et al. v. Clawson et al., 79 Ind. 188; Armstrong et al. v. Hufty, 156 Ind. 606, 55 N. E. 443, 60 N. E. 1080; Barton et al. v. Kimmerly, 165 Ind. 609, 76 N. E. 250, 112 Am. St. Rep. 252; Kammerer v. Morlock, 125 Mich. 320, 84 N. W. 319; Toll v. Wright, 37 Mich. 93; Miller v. Sullivan, 4 Dill. 340, Fed. Cas. No. 9592.

"The reasoning upon which this doctrine is sustained is stated in Harlan v. Peck, supra, in the following language: 'There is nothing in the policy or language of the statute which excludes void sales from its operation. The policy of the statute is to quiet titles to real estate sold by order of the probate courts; and in view of that policy merely, there can be no distinction between sales which may be termed void for the want of jurisdiction and those which are voidable only. Nor is there anything in the language of the statute which creates such distinction. * * * [If the statute applies only to valid sales], the defendant in every case would be compelled to allege and prove a valid sale before he could invoke the protection of the statute; or, in other words, he must show that he stands in no need of protection in order to obtain protection. * * * We think the statute applies to all sales, void, as well as voidable.'

"Similar reasoning is employed by Judge Cooley to sustain the same conclusion in Toll v. Wright, supra. The text-writers are not agreed as to where the weight of authority lies. The author of the note in O'Keefe et al. v. Behrens et al., supra, 8 L. R. A. (N. S.) 354, makes the following statement: 'There is a conflict of authority upon the question whether a purchaser of real property at a void judicial sale, where he enters into and holds possession thereof for the period of time prescribed by the statute of limitations, will be protected thereby. The weight of authority, however, is in accord with O'Keefe v. Behrens, holding that a purchaser in possession for the statutory period will be protected, even though the proceedings leading up to the sale, or the sale itself, is void.' The examination of the authorities we have been able to make leads us to the belief that the foregoing statement is correct. But, if we are mistaken in this view, we are impressed that this doctrine is supported by the sounder reason. For this reason, we are persuaded to adopt it and apply it in this case."

The case of O'Keefe v. Behrens (Kan. 1906) 85 Pac. 555, discussed in Dodson v. Middleton, supra, is another case directly in point, and incidentally is a direct refutation of the argument of plaintiffs in error that a distinction is made where the proceedings are void for want of any notice to the persons to be charged. The first paragraph of the syllabus in that case is as follows:

"Section 16 of the Code of Civil Procedure, requiring actions brought by the heirs of a deceased person for the recovery of real property descending to them, but sold by an administrator of the estate of the decedent upon an order of court directing such sale, to be commenced within five years after the date of the recording of the deed made in pursuance of the sale, applies to sales which are void for want of notice to the heirs of the proceedings upon which the deed is based."

The court, after discussing some prior decisions, says:

"In justice to all persons interested, land ought to be sold to the highest possible advantage, and this cannot be done unless purchasers have confidence in the security of their titles. Men will not pay for land upon which to found homes unless they are to be protected in the undisturbed enjoyment of the fruits of their enterprise. After a fair purchase has been made upon the faith of an order of sale granted by a court of competent authority and the purchase money has been irretrievably distributed among creditors, it would result in the rankest kind of injustice to allow heirs to remain silent for years and then, prompted by some fortuitous circumstance, like the discovery of oil or other mineral in the vicinity of the premises, to claim them. The state itself, as a matter of public policy, is interested in the repose and stability of land titles, in the development and improvement of landed property which doubtful tenures prohibit, and in the repression of vexatious and speculative litigation. These considerations apply as well to sales made without notice as to those of which the heirs have been legally informed. A title which is not infirm needs no statute of limitations for its protection. If there be no defects, remedial legislation is superfluous. * * *

"The basis of the action must, of necessity, be the absence of some fact essential to probate jurisdiction. The language of the statute, which is plain and unambiguous, clearly applies to such an action, and to limit its operation to sales made upon voidable orders only is to make an unauthorized and unwarranted interpolation. It is to be conceded that whatever is placed of record must be capable of description as an administrator's deed, or the statute will not be set in motion. It must also be tested by what appears upon its face. But if it can be said, from what appears there, that it fairly complies with the law, it will be sufficient, although informal and irregular. Such deed must also be made pursuant to an order or judgment directing a sale. The court must have acted, and what it did must be of a character to make it identifiable as an order or judgment. * * * But after an administrator's deed, made pursuant to an order or judgment of the proper court directing a sale, has been placed of record, heirs must sue to recover the property within five years, or be deemed to have admitted the validity of the sale and conveyance whether they had notice

of the proceedings or not. After the expiration of that time the purchasers cannot be called upon to vindicate their legality."

In the recent Kansas case of Mowry v. Howard, 70 Pac. 863, the action by the execution debtor to recover real estate sold on execution was held barred as against one acquiring title under a void sheriff's deed. The court said:

"It is contended the sale and deed based thereon were absolutely void, and may be so declared in this collateral action.

"We are of the opinion a proper decision of this case involves a determination of neither of the above propositions, but let us assume either or both of the contentions made determined in favor of plaintiff, and yet we are of the opinion a recovery of the property cannot be had in this action. There was a general finding in favor of defendants in the court below. The record contains a copy of the sheriff's deed. It is regular upon its face, * * * prima facie valid. It was filed for record and recorded February 19, 1891. This action was commenced December 28, 1900. * * * Plaintiffs' cause of action was barred some four years before it was instituted."

The very statute of limitations involved in the case at bar was also involved in the case of Group v. Jones, 44 Okla. 344, 144 Pac. 377, in which case a judgment debtor brought suit to recover property sold on mortgage foreclosure more than five years after the recording of the sheriff's deed issued on the foreclosure sale. The plaintiff insisted that both the sale and the confirmation and the deed issued thereunder were void. In that case, the court, speaking through Mr. Commissioner Brewer, said:

"Assuming that the sale and the deed thereunder were void, under the authority of Dodson v. Middleton, 38 Okla. 763, 135 Pac. 368, the statute bar would attach. The Dodson Case, supra, is a case involving the second subdivision of the statute as quoted above, and which provides a five-year limitation against heirs and devisees of deceased persons, or wards or their guardians, in actions for the recovery of real property sold by executors, administrators, or guardians, etc. In that case, the court, without deciding, assumed that the guardian sale was void, but held that, inasmuch as the wards failed to bring their action within five years or within two years, after their disabilities were removed, they were barred from so doing by the statute of limitations."

In 1 Cyc. 1082, it is said:

"To constitute color of title it is not essential that the title under which the party claims should be a valid one. A claim asserted to property under the provisions of a conveyance, however inadequate to carry the true title to such property, and however incompetent might have been the power of the grantor in such conveyance to pass a title to the subject thereof, is strictly a claim under color of title, and one which will draw to the possession of the grantee the protection of the statute of limitations, other requisites of those statutes being complied with. Whenever this defense is set up the idea of right is excluded; otherwise the statute of limitations would be of little use for protecting those who could otherwise show only an indefeasible title to the land."

And again, at page 1085:

"A deed, though it be defective, will constitute color of title. So the rule is broadly stated in a very large number of decisions that a deed purporting to convey the land in controversy will give color of title to a possession taken under it, even though it be void.

"Deed Void For Matters Dehors The Instrument. A deed void for matters dehors the instrument will constitute color of title, provided it purports to convey the land in controversy."

In 1 R. C. L. 711, it is said:

"Generally speaking, any instrument, however defective or imperfect, and no matter from what cause invalid, purporting to convey the land, and showing the extent of the tenant's claim, may be color of title; and a claim to the land thereunder will draw to the claimant the protection of the statute of limitations, the other requisites of adverse possession being present."

And again at page 715, where it is said:

"A judgment or decree of a court of record may constitute color of title in one who takes possession thereunder, notwithstanding the existence of defects which would render it incompetent as evidence of title. So, the deed given to a purchaser at a judicial sale will confer color of title on him, even though, as a conveyance, it is ineffectual." Turk v. Page. 68 Oklahoma, 174 Pac. 1081; Hall v. Law, 102 U. S. 461 26 L. Ed. 217, Wright v. Mattison, 18 How. (U. S.) 50, 15 L. Ed. 280; Pillow v. Roberts, 13 How. (U. S.) 472, 14 L. Ed. 228; McIntyre v. Thompson. 4 Hughes (U. S.) 562, 10 Fed. 531; Lewis v. Barnhardt, 43 Fed. 854 (affirmed in 145 U. S. 56, 12 Sup. Ct. Rep. 772, 36 Wheat. [U. S.] 541, 6 L. Ed. 155); Walker v. Cronkite, 40 Fed. (Kan.) 133; Goodman v. Nichols, 44 Kan. 22, 23 Pac. 957; Cheesbrough v. Parker, 25 Kan. 566; Steward et al. v. Rea et al., 74 Kan. 868, 87 Pac. 1150; Mowry v. Howard, 65 Kan. 862, 70 Pac. 863; Ganahl v. Soher, 68 Cal. 95, 8 Pac. 650; Reid v. Ring, 93 Cal. 96, 28 Pac. 85. For extensive notes citing cases from various jurisdictions, see the note to O'Keefe v. Behrens (Kans.) 8 L. R. A. (N. S.) 354, and the note to Power v. Kitching, 10 N. Dak. 254, 86 N. W. 737, 88 Am. St. Rep. 701.

The evidence in this case sufficiently supports the findings of the trial court that the sheriff's deed was sufficient in law to put

into operation the statute of limitations, as well as the findings on the adverse possession of the plaintiff of more than five years prior to the commencement of the action, and likewise the general findings and judgment in favor of the plaintiff must be sustained. While this disposes of the appeal, yet the defendant alleges in his cross-petition that the land in controversy was bought with the money of the defendant, Barnsdall, and was at all times the property of Barnsdall, and that the record title to said land was in Richard C. Adams; that he, Adams, held the property in trust for Barnsdall, who was at all times the owner of the land, and therefore the judgment of the trial court was erroneous, and plaintiffs in error cite in support of this contention Rev. Laws 1910, section 6660, which is as follows:

"When a transfer of real property is made to one person, and the consideration therefor is paid by or for another, a trust is presumed to result in favor of the person by or for whom such payment is made."

This contention of plaintiffs in error cannot be maintained, for the reason that the same is concluded against them by the succeeding section of the statute, supra, 6661, which is as follows:

"No implied or resulting trust can prejudice the rights of a purchaser or incumbrancer of real property, for value and without notice of the trust"

—which latter section was construed by this court in the case of Baird v. Williams, 4 Okla. 173, 44 Pac. 217, and very recently again in the case of Noe v. Smith, 67 Oklahoma, 169 Pac. 1108. In the latter case the syllabus is as follows:

"When an instrument which clothes another with the indicia of title to property is used by him, the equities of innocent purchasers are protected. For where the true owner holds out another or allows him to appear as the owner of, or as having full power of disposition over, the property, and thus leads a third person to do what he would not otherwise have done, the owner will not then be allowed to subject such third person to loss or injury by disappointing the expectations upon which he acted." Chandler v. Roe, 46 Okla. 349, 148 Pac. 1026; Hines v. Meador (Tex.) 193 S. W. 1111; United States v. Cal. & O. Land Co., 148 U. S. 31; Lea v. Polk County Copper Co., 62 U. S. (21 How.) 493, 16 L. Ed. 203.

Finding no reversible error in the record, the judgment of the trial court is affirmed.

HARRISON, C. J., and KANE, MILLER, and KENNAMER, JJ., concur.