# GROUP v. JONES.

No. 3783.   Opinion Filed July 28, 1914.

On Rehearing, December 1, 1914.

(144 Pac. 377.)

**LIMITATION OF ACTIONS—Recovery of Realty.** Certain town lots were sold under execution, in a mortgage foreclosure sale, March 16, 1897. The sale was confirmed by the district court on June 7, 1897, and a sheriff's deed issued to the purchaser, which deed was placed of record August 11, 1897. The judgment debtor brought suit to recover the property August 1, 1911. **Held,** that the suit could not be maintained, because barred by the five-year statute of limitations. Section 4655, Rev. Laws 1910.

(Syllabus by Brewer, C.)

*Error from District Court, Oklahoma County;*

*Geo. W. Clark, Judge.*

Action by T. H. Group against E. M. Jones. Judgment for defendant, and plaintiff brings error. Affirmed.

*J. S. Jenkins, A. E. Jenkins,* and *John Fulton,* for plaintiff in error.

*Wilson & Tomerlin* and *E. E. Buckholts,* for defendant in error.

Opinion by BREWER, C. This suit was filed August 1, 1911, to recover judgment for the restitution of lots 13 and 14 in block 36, Oklahoma City, Okla. On January 5, 1895, the plaintiff, Group, was the owner and in possession of the lots involved here, and on that date he and his wife joined in a mortgage of the same to a man by the name of Wills. The mortgage indebtedness was not paid, and suit in foreclosure was instituted in 1896, which resulted in a judgment of foreclosure dated January 2, 1897. An order of sale was thereafter issued, and the property was sold by the sheriff March 16, 1897, and the order of sale was returned and filed March 27, 1897. On June 7, 1897, an order was made and entertained by the court confirming the sale, and on the same date the sheriff executed and delivered

to H. Overholser his deed for the lots. This deed was placed on record on August 11, 1897. Thereafter Henry Overholser conveyed to L. Overholser and Newton Avey, and thereafter Overholser and Avey conveyed to the present defendant, E. M. Jones.

The mortgage which was foreclosed on these lots did not contain a "waiver of appraisement," but, after the judgment was entered in the foreclosure, the defendants executed a separate instrument in writing, in which they waived an appraisement of the lots and formally and specifically consented to their sale under an execution issued that day or the next to enforce the judgment.

The defendant filed a demurrer to the petition in this case, which was sustained by the court, on the theory that the petition showed on its face that plaintiff's cause of action, if any, had been long since barred by the statutes of limitations. The action of the court in sustaining the demurrer to the petition is the sole question involved in this appeal. Section 4655, Rev. Laws 1910, is as follows:

"Actions for the recovery of real property, or for the determination of any adverse right or interest therein, can only be brought within the periods hereinafter prescribed, after the cause of action shall have accrued, and at no time thereafter: First. An action for the recovery of real property sold on execution, brought by the execution debtor, his heirs, or any person claiming under him, by title acquired after the date of the judgment, within five years after the date of the recording of the deed made in pursuance of the sale."

It will appear from reading the statute that the court was correct in sustaining the demurrer in this case. The plaintiff insists that notwithstanding the statute seems to preclude his recovery, yet the sale and the confirmation thereof are void, in that there was no consideration for the waiver of appraisement in the separate instrument in which this was done; and that, if the waiver of appraisement is held to be valid, then sufficient time had not elapsed at the time of the confirmation. We do not think it is necessary to enter into a discussion of these points, although it

could probably be demonstrated, on authority, that the written consent to the sale in the manner performed filed as a paper in the case after judgment, presumably for the benefit of all parties, would have the effect of curing the irregularities in the proceedings; but, be this as it may, and we decline to decide the point, assuming that the sale and the deed thereunder were void, under the authority of *Dodson v. Middleton,* 38 Okla. 763, 135 Pac. 368, the statute bar would attach. The Dodson case, *supra,* is a case involving the second subdivision of the statute as quoted above, and which provides a five-year limitation against heirs and devisees of deceased persons, or wards or their guardians, in actions for the recovery of real property sold by executors, administrators, or guardians, etc. In that case the court, without deciding, assumed that the guardian sale was void, but held that, inasmuch as the wards failed to bring their action within five years or within two years after their disabilities were removed, they were barred from so doing by the statute of limitations. The syllabus in the case is as follows:

"Where the grantee went into possession of real estate immediately after the purchase thereof by him at a void guardian's sale, and such grantee and those claiming under him remain continuously in possession thereof thereafter, and where the action to recover said real estate is not brought by the minor or his guardian within five years after the recording of the deed, nor by the minor within two years after his legal disability is removed, an action by such minor for the recovery of said property is barred by sections 5547-5549 Comp. Laws 1909; Rev. Laws 1910, secs. 4654-4656."

That case is directly in point here and controls the decision of the case at bar. We may add, however, that this statute, which came to us from the state of Kansas, has been construed in an opinion by Mr. Justice Brewer in *Cheesebrough et al. v. Parker,* 25 Kan. 566, wherein it is said in the syllabus:

"Under execution issued out of the probate court under section 191, c. 91, Comp. Laws 1862, the property in controversy was levied upon and sold. Sale was confirmed; deed made July 30, 1869, and recorded September 4, 1869. This action was com-

menced September 10, 1878, by the execution debtor and one claiming by deed from her subsequent to the sheriff's sale and deed. *Held,* that clause 1, sec. 16, c. 80, Comp. Laws 1879, was applicable, and this statute of limitations a bar to the action."

In this case the sheriff's deed to the property sold under execution was recorded August 11, 1897. The judgment debtor waited nearly fourteen years before filing the suit, alleging the property to be now worth $30,000, and the rents ·or use of the property by defendant several thousand dollars. This is just the kind of a suit the statute was enacted to prevent.

The judgment of the trial court is affirmed.

## On Rehearing.

Opinion by BREWER, C. It is admitted in the argument on the petition for rehearing that the former opinion, holding the case barred by the statute of limitations, would be correct, if this were a suit for the possession of land or to determine an adverse interest therein. But it is claimed that this is really an equitable bill to redeem, on the theory that the present defendant is merely a mortgagee in possession, because he deraigns his title through a claim commencing at a sale under a mortgage foreclosure which is asserted to be void. The prayer of the petition begins with the demand for "judgment for the restitution of the said premises, and that all right, title, and interest, acquired by this defendant, and those under whom he claims, in and to said lots, be canceled, set aside, and held for naught." It is true the prayer asks for other relief as well, but it seems to us that the real purpose of the bill is to obtain possession of the lots and have an adjudication of adverse interests, which was the predicate upon which the former opinion proceeded; if so, the former opinion is correct. But, if it is a bill in equity, it must show an equitable right to the relief demanded, to withstand the demurrer attacking its sufficiency. The attack made on the foreclosure proceedings is that the lots were sold without appraisement, and that appraisement was not waived in the mortgage; and, if this were all, the contention might be good. But the judgment in this case

was rendered in the ordinary form, and would have required an appraisement, and no steps were taken to sell without one, until all the parties to the suit, mortgagors and sureties on their note as defendants, and the mortgagee as plaintiff, joined in, and filed in the case in the court, the following agreement:

"Territory of Oklahoma, Oklahoma County—ss.:

"District Court.

"HENRY WILLS, *Plaintiff*,

v.

"T. H. GROUP, ELLEN GROUP, H. OVERHOLSER and EDWARD COOKE, *Defendants*.

"WAIVER OF APPRAISEMENTS.

"We the undersigned, parties to the above-entitled suit do hereby waive all appraisement whatsoever of the property involved in the cause above named, to wit: Lots 13 and 14 in block 36, First St., Oklahoma City, less the amount of said lots formerly deeded to the Choctaw Railroad Company off north end, and we do hereby consent that said property may be sold under the order of sale issued herein without such appraisement.

"Dated the 1st day of February, 1897.

"[Signed.]                              "H. OVERHOLSER.
                                        "EDWARD H. COOKE.
                                        "H. WILLS.
                                        "T. H. GROUP.
                                        "ELLEN E. GROUP.

"Territory of Oklahoma, Oklahoma County—ss.:

"Personally appeared before me the undersigned authority, Henry Wills, T. H. Group, H. Overholser and Edward H. Cooke, to me known to be the persons who executed the foregoing estimate and each for himself acknowledged that he executed the same for the purposes therein mentioned.

"[Signed.]                              ELVA C. BORROWS,
"[Seal.]                                *Notary Public.*

"My commission expires April 15, 1899.

"Witness my hand and seal this 11th day of February, 1897.

"Filed in district court, Oklahoma county, O. T., Feb. 12, 1897.

"ED. L. DUNN, *Clerk.*
"By GEO. L. COOKE, *Deputy.*"

On the day this paper was filed in the case, although some days after it was signed, an execution was issued, and a sale made, and later confirmed, otherwise than as to appraisement, in strict compliance with the law; and the property was bought by a stranger to the mortgage, who in turn sold to others, and they to others, until it was bought by the defendant, Jones. This is all shown in the bill, and we are of the opinion that this, coupled with the fact that plaintiff thereafter stood silently by while the property was being sold and transferred through a course of nearly fourteen years, estops him under the plainest principles of equity.

These parties, so far as the bill discloses, with full knowledge of their rights, without fraud, misrepresentation, or overreaching, for purposes of their own, and evidently to facilitate the conclusion of the litigation in which they were involved as opponents, filed this paper, saying to those immediately concerned, as well as to strangers who might later buy the title, "And we do consent that said property may be sold under the order of sale issued herein, without appraisement." This led the mortgagee to proceed, and doubtless the purchaser at the sale and other purchasers since as well, in full reliance upon the consent filed in the case, that the sale be accomplished as it was.

In Pomeroy's Equity Jurisprudence, p. 804, it is said:

"Equity estoppel has been defined as 'the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed, either of property, of contract, or of remedy, as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right, either of property, of contract, or of remedy.'"

And in *Diamond v. Manheim et al.*, 61 Minn. 178, 63 N. W. 495, the subject is discussed as follows:

"The equitable doctrine of estoppel by conduct, which is altogether different from technical legal estoppels *in pais*, so far from being odious, is a favored doctrine of the courts. Equitable estoppel, in the modern sense, arises from the 'conduct' of a party, using that word in its broadest meaning, as including

his spoken or written words, his positive acts, and his silence or negative omission to do anything. Its foundation is justice and good conscience; its object is to prevent the unconscientious and inequitable assertion of enforcement of claims or rights which might have existed or been enforceable by other rules of the law, unless prevented by the estoppel; and its practical effect is, from motives of equity and fair dealing, to create and vest opposing rights in the party who obtains the benefit of the estoppel. Pom. Eq. Jur. sec 802; *Horn v. Cole*, 51 N. H. 287 [12 Am. Rep. 111]."

*Bulat v. Londrigan,* 63 N. J. Eq. 22, 50 Atl. 909, is an interesting case on estoppel, the opinion being written by Chancellor Pitney, now Justice of the Supreme Court of the United States, and, while the facts are not similar, the general principles announced are applicable. The other points urged have been examined, but need no discussion, as they are unsound.

We are still of the opinion that the cause should be affirmed. If the cause is not barred, there is no equity in the bill.

By the Court: It is so ordered.