## MORTGAGE & DEBENTURE CO., Ltd., v. BURROWS et al.

No. 9251—Opinion Filed June 17, 1919.

(Syllabus by the Court.)

**1. Indians—"Minor"—Rights of Majority—Effect.**

A "minor" within the meaning of section 6 of Act of Cong. May 27, 1908, c. 199, 35 Stat. L. 312, includes males under the age of 21 years, and females under the age of 18 years, and an order of the district court granting such minor the rights of majority does not confer upon him or her the authority to do any act affecting at the time, or thereafter, his or her allotted lands independent of the jurisdiction and supervision of the county courts of the state.

**2. Same — Alienation of Land — Statute — "Except as Otherwise Provided by Law."**

The qualification in section 6 of Act of Cong. May 27, 1908, c. 199, 35 Stat. L. 312, "except as otherwise specifically provided by law," means federal law, and not state law.

**3. Same—Allotment—Exemption—Execution Sale After Majority.**

Lands allotted to a Choctaw Indian of one-fourth blood are not subject to sale on execution after she becomes of age, to satisfy a judgment rendered against her after reaching her majority upon an indebtedness incurred before reaching the age of 18 years.

Error from District Court, Garvin County; F. B. Swank, Judge.

Action for injunction by Julia Christian Burrows, nee James, against the Mortgage & Debenture Company, Limited, and others. Demurrer to petition overruled and judgment for plaintiff, and defendant the Mortgage & Debenture Company, Limited, brings error. Affirmed.

Tibbetts & Green, for plaintiff in error.

Blanton & Andrews, for defendants in error.

PITCHFORD, J. Julia Christian Burrows, defendant in error, filed this action in the district court of Garvin county, seeking to enjoin the Mortgage & Debenture Company, plaintiff in error, from selling certain lands belonging to the defendant in error. For convenience the parties will be designated in this action as they appeared in the court below. The plaintiff is a member of the Choctaw Tribe of Indians, of one-fourth Indian blood. She became of age on the 24th of August, 1913. By decree of the district court of Garvin county of date August 15, 1910, the plaintiff was granted rights of majority upon the application of her next friend, F. L. Christian, and on the last-named date she executed a mortgage to one Samuel H. Graves, covering her allotment for $1,200 and interest, evidenced by promissory note due and payable on the 1st day of July, 1917. Thereafter Graves sold and conveyed the notes and mortgage to the defendant the Mortgage & Debenture Company. On the 17th of May, 1915, the plaintiff recovered judgment against the defendant in the district court of Garvin county, canceling the mortgage as a cloud on her title, and at the same time, and as part of the same judgment, it was adjudged that the defendant should have and recover from the plaintiff $1,371, with interest and attorney's fee, the amount due upon the note.

On July 16, 1915, the defendant caused an execution to issue on said judgment, and thereafter the lands constituting the allot-

ment of plaintiff were levied upon by the sheriff for the purpose of satisfying said judgment. Thereupon the plaintiff instituted this action for the purposes before stated. The defendant filed a demurrer to the petition, which was overruled by the court. The defendant refusing to plead further, and, electing to stand on its demurrer, judgment was rendered in favor of the plaintiff as prayed for. From this judgment the defendant appeals.

The two assignments of error presented and argued by the defendants are:

First. The court erred in holding the allegations of the petition sufficient to establish a cause of action and in overruling the demurrer.

Second. The decision of the court deprives the plaintiff in error herein of certain rights to which it is entitled by virtue of the act of Congress of May 27, 1908, to wit, the right to obtain satisfaction of its judgment out of real estate owned by the defendant in error.

The assignments of error are so related and interdependent as to enable us to treat them together; in fact, counsel for defendant in their brief have so treated them. The court by its order granting the rights of majority to the plaintiff conferred upon her, in so far as her contracts were concerned, the same powers as if she had been an adult. That is, she had the power to contract and execute notes and mortgages, the same as any adult, and to deal with any real estate that she might have owned, except any lands received by her as a member of the Choctaw Tribe of Indians.

The act of Congress to enable the people of Oklahoma and Indian Territory to form a Constitution and a state government, and to be admitted to the Union, provided in section 1 that nothing contained in the said Constitution should be construed to limit or impair the rights of persons or property pertaining to the Indians of said territory, so long as such rights shall remain unextinguished, or to limit or affect the authority of the government of the United States to make any law, or regulation respecting such Indians, their lands, property, or other rights by treaties, agreement, law, or otherwise, which it would have been competent to make if the act had never been passed. This provision of the Enabling Act was incorporated into the Constitution of Oklahoma.

Section 3 of article 1 provides:

"That the people inhabiting the state do agree and declare that they forever disclaim all right and title in or to any unappropriated public lands lying within the boundaries thereof, and to all lands lying within said limits owned or held by any Indian Tribe, or nation, and that until the title to any such public land shall have been extinguished by the United States, the same shall be and remain subject to the jurisdiction, disposal, and control of the United States."

Section 5 of the Supplemental Choctaw and Chickasaw Treaty (Act of July 1, 1902, c. 1362, 32 Stat. L. 641) provides that the word "minor" shall be held to mean males under the age of 21 years and females under the age of 18 years. Section 15 of the same treaty provides:

"That lands allotted to members and freedmen shall not be affected or incumbered by any deed, debt, or obligation of any character contracted prior to the time at which said land may be alienated under this act, nor shall said lands be sold except as herein provided."

The act of Congress of May 27, 1908, c. 199, 35 Stat. L. 312, provides as follows:

"Sec. 3. That the rolls of citizenship and of freedmen of the Five Civilized Tribes approved by the Secretary of the Interior shall be conclusive evidence as to the quantum of Indian blood of any enrolled citizen or freedman of said tribes and of no other persons to determine questions arising under this act and the enrollment records of the Commissioner to the Five Civilized Tribes shall hereafter be conclusive evidence as to the age of said citizen or freedman."

"Sec. 5. That any attempted alienation or incumbrance by deed, mortgage, contract to sell, power of attorney, or other instrument or method of incumbering real estate, made before or after the approval of this act, which affects the title of the land allotted to allottees of the Five Civilized Tribes prior to removal of restrictions therefrom, and also any lease of such restricted land made in violation of law before or after the approval of this act shall be absolutely null and void.

"Sec. 6. That the persons and property of minor allottees of the Five Civilized Tribes shall, except as otherwise specifically provided by law, be subject to the jurisdiction of the probate courts of the state of Oklahoma."

The qualification in section 6, supra, "except as otherwise provided by law," as held in Truskett v. Closser, 236 U. S. 223, 35 Sup. Ct. 385, 59 L. Ed. 549, means federal law and not state law. It will be seen from the foregoing that the state of Oklahoma has in clear and unequivocal terms disclaimed all jurisdiction over the allotted lands of the various tribes of Indians. The jurisdiction over these lands is lodged exclusively in the federal government.

The case of Dodd v. Cook, 41 Okla. 105, 137 Pac. 348, was in some respects similar to the case at bar. There, Minnie Gore, a Choctaw Indian of one-fourth blood, inherited her father's allotment. In November, 1904, she executed a deed to the land so inherited to G. W. Dodd. At the time of the execution of the deed she was a minor, but was married to one Gaskell, and executed the deed in the name of Minnie Gaskell, nee Gore. The question was whether the deed conveying such land while she was a minor, although married, was a valid conveyance. The court, quoting from Jefferson v. Winkler, 26 Okla. 653, 110 Pac. 755, said:

"A 'minor' within the meaning of said section includes males under the age of 21 years and females under the age of 18 years, and the marriage of such a minor does not confer upon him or her the authority to sell his or her allotted lands independent of the jurisdiction and supervision of the probate courts of the state."

To the same effect is Gill v. Haggarty, 32 Okla. 407, 122 Pac. 641. In the cases just cited, the act of May 27, 1908 (35 Stat. L. 312), was exhaustively discussed. The conclusion there reached was that a conveyance of this character by a minor, although such minor may have been married at the time, conveys no title to the land conveyed and gives no right or interest to the grantee of such land.

In the case of Truskett v. Closser, supra, the facts were as follows: One Goodman, who was one-eighth Indian blood and seven-eighths white blood, did not attain the full age of 21 years until September 25, 1910. Before that date, to wit, on October 12, 1909, in a proceeding brought by his next friend, the district court of Washington county, Okla., by a decree duly entered, removed from Goodman the disability of minority and conferred upon him the rights of majority concerning contracts, and authorized and empowered him to transact business in general with the same effect as if such business were transacted by a person over the age of 21 years. In pursuance of this decree, Goodman granted to one Overfield a lease for oil and gas mining purposes covering his entire allotment for a term of 15 years from its date, and as long thereafter as oil or gas should be found in paying quantities. On September 14, 1910, that is, subsequent to the decree conferring majority rights upon Goodman, and subsequent to the lease granted above, the legal guardian of Goodman granted a lease in behalf of Goodman to other parties covering the same lands. The last lease was both authorized and confirmed by the order of the county court of

the proper county. The question there was: Of the two leases, which constituted the better title? The decree there entered was in favor of the subsequent lessee and decreed the cancellation of the lease executed by Goodman.

We do not think it would be seriously contended that the plaintiff would have been bound by any deed or mortgage executed by her prior to her majority as shown by the enrollment record; in fact, defendant confesses that the mortgage she executed on the date of the order conferring majority rights was of no effect, and that the court correctly so declared. Therefore, if neither a deed nor mortgage of that date would be effectual to convey any rights, how can it be successfully claimed that by the execution of the note during the minority of the plaintiff, and thereafter reducing the note to judgment, any greater rights could accrue to the judgment creditor than could be obtained by a deed or mortgage executed at the same time? The Indian citizen, by no act on his or her part, can be bound by any transaction affecting his or her allotted lands during the period of restriction.

In First State Bank of Hewitt v. Lowery, 72 Oklahoma, 178 Pac. 983, Owen, J., in delivering the opinion, said:

"It is contended by counsel that under section 1 of that act" (Act Congress May 27, 1908) "this land was free from any restrictions within the meaning of the act. With this we do not agree. Section 6 of the act provides that property of minor allottees shall be subject to the jurisdiction of the probate courts of the state, and no provision is made for the sale of lands held by minors except through probate proceedings. It has been repeatedly held in effect that minority is a restriction upon alienation of such lands within the meaning of this act, and that such lands can only be conveyed by a guardian authorized in a proper proceeding in the county court. McKeever v. Carter, 53 Okla. 360, 157 Pac. 56; Tiger v. Read, 60 Okla. 106, 159 Pac. 499; Egan v. Ingram, 58 Okla. 766, 161 Pac. 225; Barnard v. Bilby, 68 Oklahoma, 171 Pac. 444; Crow v. Hardridge, 73 Oklahoma, 175 Pac. 115; Etchen v. Cheney, 235 Fed. 104, 148 C. C. A. 598."

We therefore conclude that the lands of the plaintiff herein levied upon are not subject to sale on execution to satisfy the judgment rendered against her upon a note executed during her minority, as shown by the enrollment records.

The judgment of the trial court is therefore affirmed.

OWEN, C. J., and HIGGINS, SHARP, and McNEILL, JJ., concur.