**SANDLIN et al. v. BARKER et al.**
**(two cases).**

Nos. 11630, 11631—Opinion Filed June 5, 1923.

Rehearing Denied Sept. 18, 1923.

(Syllabus.)

**1. Executors and Administrators — Sale of Lands Not Assets of Estate.**

Probate courts do not have jurisdiction to authorize an administrator to sell lands that are not assets of decedent's estate for the payment of decedent's debts or for any other purpose.

**2. Same—"Assets."**

Assets, as applied to decedents' estates, mean property, real or personal, tangible or intangible, legal or equitable, which can be made available for or may be appropriated to the payment of debts.

**3. Indians—Restricted Lands—"Assets" of Estate of Deceased Allottee—Sale to Pay Debts.**

Since under section 4 of the act of Congress of May 27, 1908, allotted lands cannot be subject to or held liable for any form of personal claims or demands against the allottee arising or existing prior to removal of restrictions, such allotted lands, upon which restrictions had not been removed at the time of the death of the allottee, are not assets of the deceased allottee's estate and are not subject to sale by the administrator to pay debts of the estate.

**4. Same—Minority of Allottee as Restriction.**

The minority of a Creek freedman is a restriction upon alienation under the act of May 27, 1908, and allotted lands of such minor Creek freedman are not subject to or to be held liable for any form of personal claim or demand against the allottee arising or existing prior to his majority, and upon the death of such allottee, his lands are not assets of the estate, and a sale made by the administrator to pay debts of the estate is void.

**5. Indians — Conveyance of Restricted Land —Statute of Limitations.**

The statute of limitations does not begin to run in favor of one holding under a conveyance executed in violation of federal restrictions during the existence of the federal restriction; but, upon the removal of such restriction, the statute of limitations begins to run.

**6. Executors and Administrators—Void Sale of Lands by Administrator — Limitation of Action to Recover.**

Where suit is brought to recover lands sold by an administrator upon the order of the county court, the same must be brought within the time specified in subdivision 2 of section 183, Comp. Stat. 1921, even though the administrator's sale is absolutely void.

Error from District Court, Creek County.

Consolidated actions by Mary Bessie Barker and others (G. L. Sandlin and others intervening) against George Nave and others to recover lands. Judgment for defendants, and plaintiffs and interveners bring error. Reversed and remanded, with directions.

H. M. Tate, LaFayette Walker, Wright & Dulin, and Stone. Moon & Stewart, for plaintiffs in error.

West, Sherman, Davidson & Moore, Foreman & Simms, J. C. Denton, R. H. Wills, G. W. P. Brown and R. Emmett Stewart, for defendants in error.

COCHRAN, J. The two cases which have been consolidated here involve the allotment of Louis Barker and Emma Barker, newborn Creek freedmen. These allottees died on January 6 and 7, 1911, respectively, and were minors at the time of their death. George W. Davis was thereafter appointed administrator of the estates of Louis Barker and Emma Barker, in separate proceedings in Okmulgee county, and, as administrator of said estates, sold the aforesaid allotments for the purpose of paying debts due by the estates of the allottees. These suits were filed by the heirs of the allottees to recover the lands so sold, on the ground that the sales were void.

It is contended by the plaintiffs in error that the probate court of Okmulgee county was without jurisdiction to sell the lands in controversy. These lands were allotted to new-born Creek freedman minors, who died while minors. The sales were made through the probate court of Okmulgee county on petitions filed by the administrator wherein it was stated that it was necessary that said lands be sold for the purpose of paying the debts of the estates. The plaintiffs in error contend that the county court had no jurisdiction of the subject-matter, as the lands never became assets in the hands of the administrator.

In Barnard v. Bilby, 68 Okla. 63, 171 Pac. 444, this court said:

"It is well settled that probate courts do not have jurisdiction to authorize an administrator to sell lands that are not assets of decedent's estate for the payment of the decedent's debts, or for any other purpose. Was the land sold assets of the deceased's estate? In Mutual Life Insurance Company of New York v. Farmers' and Mechanics'

National Bank of Cadiz, Ohio (C. C.) 173 Fed. 390-397, it is held that the term 'assets,' as applied to decedents' estates, means property, real or personal, tangible or intangible, legal or equitable, which can be made available for or may be appropriated to the payment of debts."

Section 4 of the act of Congress of May 27, 1908, provided:

"That allotted lands shall not be subjected or held liable to any form of personal claim, or demand, against the allottees arising or existing prior to the removal of restrictions, other than contracts heretofore expressly permitted by law"

—and this court has repeatedly held that lands which were not subject to the payment of debts of the deceased under the above act of Congress did not become assets of the estate in the hands of the administrator. Barnard v. Bilby, supra; In re French's Estate, 45 Okla. 819, 147 Pac. 319; In re Davis' Estate, 32 Okla. 209, 122 Pac. 547; Roff v. Union National Bank, 58 Okla. 604, 160 Pac. 505.

It is contended by defendants in error, however, that section 4 of the act of May 27, 1908, has no application to the instant case; that under section 1 of said act the restrictions were removed from these lands, and any debt arising after this act became effective was an indebtedness arising after the removal of restrictions; that the act of 1908 was a complete removal of restrictions on this land except the disability of minority; that during the life of the minor the land could be sold upon proper order of the probate court to pay debts or obligations created after the passage of the act of Congress of 1908, and, therefore, section 4, as applied to the lands in controversy, only prevented such lands from being subjected to debts arising before the removal of restrictions, which were removed under section 1 of the act.

It is also insisted that the county court of Okmulgee county, being a court of general probate jurisdiction, having rendered its judgment holding that the lands were assets and subject to sale, the same cannot be attacked in a collateral proceeding. This last contention has been disposed of contrary to this contention, provided the lands were in fact restricted lands and not assets in the hands of the administrator. In Barnard v. Bilby, supra, the holding of the court is as follows:

"Since under the acts of Congress above cited, which control in these matters, the land was not subject to the payment of the debts of the deceased, it did not become assets of the estate in the hands of the administrator, and therefore the county court of Wagoner county did not obtain jurisdiction to hear and determine whether or not said land was subject to sale for the payment of the debts of the deceased, or the expenses of administration."

The holding in that case is to be distinguished from the case of Doran v. Kennedy, 237 U. S. 362, for, as said in that case:

"That court had unquestioned power to authorize a sale of it to pay certain classes of obligations. * * * Whether there were facts to warrant a sale in any given case was a question which the probate court was obliged to determine and which that court and no other had jurisdiction to determine"
—but in a case where the property cannot be sold to pay any class of obligation, the county court has no jurisdiction whatever of the subject-matter.

It next remains to be determined whether the lands in controversy were restricted lands so as to come within section 4 of the act of Congress; or, putting it in another form, whether the restrictions on this land were removed by the act of May 27, 1908. Section 6 of the act of 1908 provides:

"That the persons and property of minor allottees of the Five Civilized Tribes shall, except as otherwise specifically provided by law, be subject to the jurisdiction of the probate courts of the state of Oklahoma. * * *"

In First State Bank of Hewitt v. Lowery, 72 Oklahoma, 178 Pac. 983, this court said:

"It is contended by counsel that under section 1 of that act this land was free from any restrictions within the meaning of the act. With this we do not agree. Section 6 of the act provides that property of minor allottees shall be subject to the jurisdiction of the probate courts of the state, and no provision is made for the sale of lands held by minors except through probate proceedings. It has been repeatedly held in effect that minority is a restriction upon alienation of such lands within the meaning of this act, and that such lands can only be conveyed by a guardian authorized in a proper proceeding in the county court."

The syllabus in the above case is as follows:

"The minority of a Choctaw Indian of one-eighth blood is a restriction against alienation of lands allotted to him in any manner except by a guardian duly authorized by proper proceedings in the county court.

"Lands allotted to a Choctaw Indian of one-eighth blood are not subject to sale on

execution after he becomes of age, to satisfy a judgment rendered against him during his minority."

In Egan v. Ingram, 58 Okla. 766, 161 Pac. 225, this court used the following language:

"If, on February 21, 1909, these allotted lands were subject to any federal restriction upon Chilli Henson's right to alienate which was violated by the deed of that date, that deed was 'absolutely null and void' under the act of Congress of May 27, 1908, which took effect on July 27, 1908, and, being therefore subject to this attack, the judgment of the trial court should be affirmed. If, on September 21, 1909, these lands were, as expressly declared in the first section of said act of Congress, free from all restrictions, that is, free from all federal restrictions, so that Chilli Henson, being a minor, was merely subject to the incapacity of minors in general in this state, and so that his conveyance was merely voidable upon his disaffirmance of the same during his minority, or within one year after attaining his majority 'upon restoring the consideration to the party from whom it was received or paying its equivalent with interest, as provided by section 3973 Statutes 1890 (section 885, Rev. Laws 1910), the judgment of the trial court is wrong, and should be reversed. In other words, the principal question in this case is as to whether the act of Congress sets these lands absolutely free from all federal restrictions, or only upon condition, during the minority of such allottees, that their alienation or incumbrance is authorized by a county court of this state. In Jefferson v. Winkler, 26 Okla. 653, 110 Pac. 755, decided on July 12, 1910, this act of Congress was, for reasons therein fully set forth, construed as removing the federal restrictions on alienation or incumbrance during the minority of such allottees only upon the condition that such alienation or incumbrance should be authorized by the county courts of this state, to which end the exercise of the essential jurisdiction over the persons and property of such minors is permitted to such courts; and since that time there has been an unbroken line of decisions to the same effect."

In Mortgage & Debenture Co., Ltd., v. Burrows, 75 Okla. 94, 182 Pac. 238, the syllabus is as follows:

"Lands allotted to a Choctaw Indian of one-fourth blood are not subject to sale on execution after she becomes of age, to satisfy a judgment rendered against her after reaching her majority upon an indebtedness incurred before reaching the age of eighteen years."

In Truskett v. Closser, 236 U. S. 223, the Supreme Court of the United States held that sections 1 and 4 were not to be construed independently of the other sections of the act, and used the following language:

"And we think it is clear that sections 1 and 4 are not to be construed independently of the other sections of the act."

And further in the opinion it is said:

"In other words, it was contended that section 1 of that act was absolute and was not modified by section 2, and the court, considering all of the provisions of the act, was of the opinion that the legislative intention was to provide that the allotted lands of freedmen and mixed-blood Indians of less than half Indian blood, under the age of eighteen if a female and under the age of twenty-one if a male, might be sold under the supervision and jurisdiction of the probate courts of the state and not otherwise."

In Tidal Oil Company v. Flanagan, 86 Okla. 231, 209 Pac. 729, it was held:

"It has been the uniform holding of this court that the minority imposed upon Indian allottees within the age prescribed in section 2 of the act, supra, is in the nature of a restriction on the alienation of such allottees' lands, and title can only be acquired to such lands by a regular probate proceeding had in accordance with the statutes in the proper county court of the state."

This court has therefore committed itself to the view that so long as the minority of the allottee continued the allotted lands were subject to the restrictions contained in sections 2 and 6 of the act; and that such lands were not subject to any debts of the allottee arising during minority. If the lands of the minor allottee would not be subject to the payment of debts arising during minority and after the passage of the act of 1908 during the lifetime of the minor, and after such minor had arrived at his majority, as decided in First State Bank of Hewitt v. Lowery and Mortgage & Debenture Company, Ltd., v. Burrows, supra, there can certainly be no reason for holding that such lands in the hands of an administrator after the death of the minor would be subject to the payment of such debts. Such being the case, the lands in controversy were not subject to the payment of any of the debts of the minor, and could not become assets in the hands of the administrator.

The defendants in error contend that the statute of limitation bars the recovery of the interest of Jim Jefferson in the lands in controversy. The plaintiffs in error contend that the cause of action as to Jim Jefferson is not barred (1) because the lands

in controversy are Creek allotted lands and section 16 of the Supplemental Creek Agreement, 32 U. S. Stat. 500, prevents the running of the statute of limitation as to such lands; (2) that a deed executed in violation of the federal statutes prescribing restrictions on Indian lands cannot be the basis of title by limitation; and (3) that the statute of limitation is not effective against a void deed.

The provisions of section 16 of the Supplemental Creek Agreement have no application to this case, for the reason that the sale of the lands in the instant case was made after the act of May 27, 1908, became effective and the sale so made was not in violation of any of the provisions of the Supplemental Agreement.

The second objection, however, is based upon the decision of this court in Tidal Oil Co. v. Flanagan, 86 Okla. 231, 209 Pac. 729, in which the court said:

"A conveyance of allotted restricted Indian lands made in violation of a federal statute authorizing the alienation of such lands is against public policy and absolutely void, and in no manner can any right, title, or interest in such lands be acquired under such a conveyance."

Even though the deeds to the lands in controversy had been executed in violation of the restrictions imposed by Congress, Tidal Oil Company v. Flanagan, supra, Hutchison v. Brown, 66 Okla. 250, 167 Pac. 624, and Patterson v. Carter, 83 Okla. 70, 200 Pac. 855, are all cases where the lands were still restricted and where an enforcement of the statute of limitations would prevent the recovery of lands upon which federal restrictions still remained; but these authorities do not hold that the restrictions will not run against a deed executed in violation of the act of Congress after the restrictions had been removed. The extent of the holding of this court in that connection is clearly set out in Patterson v. Carter, supra, in the following language:

"It must not be forgotten that these restricted Indians do not become sui juris upon reaching their majority. As a dependent people, these Indians are still wards of the federal government, against which the statute of limitations does not run. In these circumstances it would be futile to hold that the statute of limitations commenced to run against the Indian himself upon reaching his majority, although it did not run against his general guardian, the United States. It is well settled that there can be no adverse possession against the federal government which can form a basis of title by estoppel, or under the statute of limitation, and it has been held that the same rule applies where the lands involved are lands that have been allotted to Indians with restrictions upon the alienation of title thereto by Indians, so long as such restrictions upon alienation exist."

And the case of Burckhalter v. Vann, 59 Okla. 114, 157 Pac. 1148, which is cited by plaintiffs in error as authority for the contention that limitations do not begin to run as to the right of action to cancel a conveyance executed in violation of federal restrictions even after restrictions have been removed, does not support that contention. In that case, a deed was executed by an Indian allottee during his minority, and an action was brought by him more than five years after he arrived at his majority, and the court held that the conveyance was absolutely void and that subdivision 4 of section 4655, Rev. Laws 1910, was the applicable statute. There was no other statute which could have been applicable under the circumstances except section 885, Rev. Laws 1910, which requires the disaffirmance by the minor of his contract within one year after he reaches his majority. The court very properly held that, this contract being void and not voidable, no disaffirmance was necessary.

While the statute of limitations does not run so long as restrictions upon alienation exist, it is our opinion that it begins to run from the date of the expiration of the federal restriction. In Wrigley v. McCoy, 73 Oklahoma, 175 Pac. 259, this court said:

"The statute of limitation does not begin to run before the removal of restrictions in favor of one in possession of Choctaw Indian lands under deed by an Indian inheriting such lands executed prior to removal of restrictions against alienation thereof."

In Bell v. Fitzpatrick, 53 Okla. 574, 157 Pac. 334, this court held as follows:

"A decree conferring rights of majority upon plaintiff being void, in so far as it undertook to confer upon her the right to alienate her allotted lands, or to change her status in reference thereto, the statute of limitations did not commence to run against her right of action to have said deed canceled and removed as a cloud upon her title until she became of age, as shown by the enrollment records of the Commissioner to the Five Civilized Tribes."

In Schrimpscher v. Stockton, 183 U. S. 290, the Supreme Court of the United States held as follows:

"The deed of an Indian, who has received a patent of land providing that it should never be sold or conveyed by the patentee or his heirs without the consent of the Secretary of the Interior, is void, and the statutes of limitation do not run against the Indian or his heirs so long as the condition of incompetency remains; but where it appeared that by treaty subsequent to the deed, all restrictions upon the sales of land by incompetent Indians or their heirs were removed, it was held that from this time the statute of limitations began to run against the grantor and his heirs. Even if Indians while maintaining their tribal relations are not chargeable with laches, or failure to assert their claims within the time prescribed by the statutes, they lose their immunity when their relations with their tribe are dissolved and they are declared to be citizens of the United States."

As to the contention that the statute of limitation does not run against an administrator's deed executed in pursuance of a void sale, this court has consistently held that the statute does run in such cases since the decision of this court in Dodson v. Middleton, 38 Okla. 763, 135 Pac. 368, by Hayes, C. J., rendered September 22, 1913. This case recognized the conflict among the authorities on the question and committed this court to the view that subdivision 2 of section 5548, Comp. Laws 1909, which provides:

"An action for the recovery of real property sold by executors, administrators or guardians, upon an order or judgment of a court directing such sale, brought by the heirs or devisees of the deceased person; or the ward or his guardian, or any person claiming under any or either of them, by the title acquired after the date of the judgment or order, within five years after the date of the recording of the deed made in pursuance of the sale"

—applied even though the proceedings leading up to the sale, or the sale itself, was void, and the case of Harlan v. Peck, 33 Cal. 515, was cited with approval, the following quotation being incorporated in the opinion:

"There is nothing in the policy or language of the statute which excludes void sales from its operation. The policy of the statute is to quiet titles to real estate sold by order of the probate courts; and, in view of that policy merely, there can be no distinction between sales which may be termed void for the want of jurisdiction and those which are voidable only. Nor is there anything in the language of the statute which creates such a distinction * * * (if the statute applies only to valid sales) the defendant in every case would be compelled to allege and prove a valid sale before he could invoke the protection of the statute; or, in other words, he must show that he stands in no need of protection in order to obtain protection. * * * We think the statute applies to all sales, void as well as voidable."

The case of Toll v. Wright, 37 Mich. 93, is also cited with approval, and in that case Judge Cooley, speaking for the court, used the following language:

"It certainly does not mean valid sales, for those need no protection. Neither can it mean sales lawfully ordered; for it makes no mention of any order, and speaks of sales only. Neither can it mean sales in which the statute has in all important particulars been followed; for the manifest purpose is to make an undisputed possession cure defects in the proceedings. Indeed, it cannot possibly, as we conceive, mean more than this: A sale purporting to be made under the provisions of the chapter (empowering the probate court to order sales of a decedent's realty), and in pursuance of an order professedly based upon them. If the administrator with such an order has made sale under the provisions of this chapter and given a deed under which the necessary possession has been had, we think the case is fairly within the intent of the statute. * * * Let it be conceded that the administrator's sale was at the time void, the fact remains that the court assumed to order it under the provisions of this statute, and the administrator has followed its provisions in making the sale. * * * But it is denied by the defendant that the Legislature has power to validate a void sale. This is not what is attempted here, as we think. The statute is intended as a statute of limitation in the proper sense. * * * And we do not doubt the competency of the Legislature thus to limit the time for bringing suit, whether the adverse possession did or did not commence under void proceedings."

In Group v. Jones, 44 Okla. 344, 144 Pac. 377, section 4655, Rev. Laws 1910, was held to bar an action to recover real estate sold under a void foreclosure sale, and Dodson v. Middleton, supra, was followed.

In Wray v. Howard, 79 Okla. 223, 192 Pac. 584, and Fulp v. Squires, 77 Okla. 223, 187 Pac. 921, subdivision 2 of section 4655, Rev. Laws 1910, was held to be the applicable statute where a minor's property had been sold at a void guardian's sale; but it was held, further, that by virtue of section 4656, Rev. Laws 1910, the minor might begin the action to set aside the sale at any time prior to two years after his legal disability was removed.

In Glory v. Bagby, 79 Okla. 155, 188 Pac. 881, the action was brought to set aside a void guardian's deed executed by the guar-

dian of a minor Cherokee Indian, and the court said:

"Under the facts in this case, we see no reason for not allowing the rule heretofore announced by this court in the case of Dodson v. Middleton."

In Mehard v. Little, 81 Okla. 1, 196 Pac. 536, this court reviewed the decision on this question from the time of the decision of Dodson v. Middleton, supra, and followed the rule announced in these cases, using the following language in the syllabus:

"Whenever an instrument, by apt words of transfer from grantor to grantee, whether such grantor act under the authority of judicial proceedings or otherwise, in form passes what purports to be the title, it gives color of title, even if invalid, and possession under it for the period prescribed by statute bars the right of the true owners as effectively as possession under the most perfect title."

This rules applies even in cases where the appointment of the guardian was void, and in cases where the court did not have jurisdiction to make the order.

In Kammerer v. Morlock (Mich.) 84 N. W. 319, a portion of the syllabus is as follows:

"How. Ann. St. 1883, sec. 6075, provides that an action by a minor heir to set aside a sale of real estate must be brought within five years after the removal of the heir's disability to sue. Held, that where a sale of real estate was void on the ground of illegal appointment of the administrator by whom it was made, an action to set aside such sale could be maintained only by those heirs of the estate who had not acquiesced in such sales for more than five years after arriving at their majority."

In L'Hommedieu v. Cincinnati, W. & M. Ry. Co. (Ind.) 22 N. E. 125, the court said:

"If the court of common pleas had no jurisdiction over the subject-matter of the petition of Moore as administrator to sell the real estate there, the proceedings were void, and it is conceded that no such jurisdiction existed. The proceedings being void, the title and right to the possession of the real estate was in the appellants at all times after the death of their father, and when the purchasers at the administrator's sale went into possession their possession was wrongful, and the appellants had then and there a right of action against them for the possession. They had no greater or better right of action after the sale had been confirmed by the court and the deeds made than they had before. The purchasers went into possession under claim of right by virtue of their certificates which was hostile and

adverse to the appellants, and they followed up this claim by afterwards procuring color of title, if the certificates did not give them such color. It was not necessary, however, that the appellees, and those under whom they claim, had color of title during the period of limitation to give to them the benefit of the statute, but it is sufficient that the character of their occupancy was such that during a period twenty years anterior to the bringing of this action the appellants had a right of action."

In Reed v. Ring (Cal.) 28 Pac. 851, the statute was held to apply even though the sale had been set aside, a portion of the syllabus being as follows:

"Held, that, even if the sale was void, the action was barred by the guardians' act of 1850, section 34, which is substantially re-enacted in Code Civil Proc. section 1806, providing that no action for the recovery of any estate sold by a guardian can be maintained by the ward, unless it is commenced within three years next after the termination of the guardianship; or, when a legal disability to sue exists by reason of minority at the time when the cause of action accrues, within three years next after the removal thereof."

In Ganahl v. Soher (Cal.) 8 Pac. 650, the syllabus is as follows:

"The requirements of the probate law that 'no action for the recovery of any estate sold by an executor or administrator under the provisions of this chapter, shall be maintained by any heir or other person claiming under the deceased testator or intestate, unless it be commenced within three years next after the sale' is applicable to all sales made by the probate courts of real estate belonging to persons who have died since the passage of the probate act, whether such sales be void or voidable; and the rule applies though the invalidity of the sale resulted from an insufficiency in the notice for appointment of the administrator."

In Hall v. Wells, 54 Miss. 289, the court said:

"Invalidity of all kinds, whether merely irregular or void, is presupposed and assumed; and hence the statute to bar the owner, if he should not proceed to recover the property in one year. There are various states of case in which an appointment by the probate courts of administrators, executors, and guardians was void for want of power in the court to do the act; but it was not intended by the Legislature that the holder of property, under sales by virtue of the order of a probate court, should be required to vindicate the power of the court to order the sale, nor its power to appoint the person who invoked the sale, nor the court to sell. The statute was passed with direct reference

to the known condition of things, and to meet that, and not upon the view that proceedings in the probate courts were what they should have been under the Constitution and laws."

The plaintiffs rely upon the following language in the case of Pettis v. Johnston, 78 Okla. 277, 190 Pac. 681:

"A judgment void on its face may be vacated upon motion, no matter what length of time has interposed since its rendition; neither is it necessary for the movant to show any meritorious defense, nor can the court impose any conditions for vacating it."

But that case has no application to the instant case. Without regard to the right to set aside the judgment ordering the sale of this real estate and confirming the administrator's sale, the purchaser at such sale who has gone into possession under the administrator's deed cannot be deprived of the property so purchased unless the action is maintained within the time provided in subdivision 2, secton 4655, Rev. Laws 1910, or within the additional time of two years after the minor reaches his majority, if the five years period runs before that time. This holding does not in any manner attempt to give life to a void judgment, which, as was said in Pettis v. Johnston, supra, "is a dead limb upon the judicial tree," but simply precludes the holder of the title from asserting his title. This is very aptly expressed in Grossbeck v. Seeley, 13 Mich. 329, in the following language:

"If the proceedings to sell for taxes were illegal, no lapse of time can change their character, and they can never, therefore, become legal. If the tax purchaser obtains possession, and holds it until protected by a limitation law, he then becomes safe, not because his tax title is any more regular, but because the holder of the better title has become incapable of asserting it. As an illegal tax title is a nullity, it cannot of itself divest or affect the true title in any way, and the true owner cannot be lawfully compelled to incur expense, or take active measures to get rid of it unless he sees fit. But if he becomes ousted, whether by a pretended tax title holder or by any adverse claimant, he can only secure the enjoyment of his rights by active measures, and the party in possession may then rely on such possession until it is lawfully assailed, by suit or otherwise, within the period of limitation."

The cases of Holt v. Spicer, 65 Okla. 17, 162 Pac. 686, Blanchard v. Reed, 67 Okla. 137, 168 Pac. 664, Keller v. Hawk, 19 Okla. 407, 91 Pac. 778, and Lowenstein v. Sexton, 18 Okla. 322, 90 Pac. 410, wherein this court held that

a tax deed void upon its face cannot be aided by the statute of limitations, are not to be considered as conflicting with the rule announced in Dodson v. Middleton, supra. These tax decisions followed the case of Waterson v. Devoe, 18 Kan. 223, in which the court said:

"When the deed discloses upon its face that it is illegal, when it discloses upon its face that it is executed in violation of law, the law will not assist it. No statute of limitations can then be brought in to aid its validity. The party accepting it, and claiming under it, has full notice of its illegality and must abide the consequences of such illegality."

In Keller v. Hawk, 19 Okla. 407, 91 Pac. 778, this court said:

"The appellant also insists that the action of the appellee was barred by the statute of limitations, by reason of it not having been commenced within the statute after the first deed was recorded. The first deed was void upon its face. Therefore, the statute of limitations did not run against it. There is apparently some conflict in the decisions upon this point, but an examination of some of these cases will show that the court rendering them failed to distinguish between a deed which is void upon its face and one which appears upon its face to be regular, but may be defeated by reason of the irregularity of the prerequisite steps, or total failure to perform some necessary duty named in the statute as the basis for a tax deed."

Further in this opinion, it is stated:

"We believe that the Legislature did not intend that time should breathe life and force into an instrument from the face of which it could be seen that it was absolutely void. The law was intended to protect purchasers at tax sales and their grantees from hidden defects in the proceedings, and not from those which the tax deed shows upon its face, and which, under the law, persons dealing with the title are bound to know."

So, regardless of whether there is any very real distinction to be made by the two classes of cases, it remains that the Kansas court and this court have consistently refused to apply the statute of limitations against a tax deed void upon its face, and have just as consistently applied the limitation to causes of action brought to cancel deeds executed under a void judicial proceeding.

It is further contended that the 15 years statute of limitations provided for by subdivision 5 of section 4655, Rev. Laws 1910, is the applicable statute of limitations, and Campbell v. Dicks, 71 Oklahoma, 176 Pac. 520, is cited to sustain that contention. The

case cited was one to recover lands and cancel a deed obtained by fraud, and subdivision 4 was held to be the applicable statute; but the decision in that case has no application to the case at bar as this case comes squarely within the provisions of subdivision 2 of section 4655, Rev. Laws 1910, and the five-year statute is therefore the applicable statute.

For the reasons stated, Jim Jefferson and those holding under and through him are barred from recovering in these suits, but the other plaintiffs are entitled to recover their interests in said lands.

The judgment tendered in the trial court are reversed, and the causes remanded, with directions to take further proceedings consistent with the views herein expressed.

JOHNSON, C. J., and McNEILL, KANE, KENNAMER, and HARRISON, JJ., concur.