### ANTHIS v. DREW et al.
### TIGER et al. v. MORROW et al.

No. 15435—Opinion Filed Oct. 20, 1925.

Rehearing Denied Nov. 16, 1926.

**1. Appeal and Error—Review—Question of Fact — Conclusiveness of Findings on Heirship.**

When the finding and judgment of the court that the evidence is insufficient to sustain the claim of heirship of interveners is not against the clear weight of the evidence, such finding and judgment will not be disturbed by the Supreme Court.

**2. Domicile—Established Residence Presumed to Continue.**

When existence of a residence at a certain place at a certain time has been established, it will be presumed to have continued until the contrary is shown.

**3. Same—Not Affected by Extended Temporary Absence.**

Temporary absence with a continuous intent to return will not deprive one of his residence, though it extend through a series of years.

**4. Indians—Lands—Removal of Restrictions—Statute of Limitations.**

The statute of limitations does not begin to run against an action concerning restricted Indian lands until the restrictions have been removed.

(Syllabus by Pinkham, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Creek County; Fred A. Speakman, Judge.

Action by C. H. Drew et al. and Lilah Tiger et al., interveners, against Willard Morrow et al. From a judgment in favor of Willard Morrow et al., the interveners Lilah Tiger et al., and the defendant and cross-petitioner Austin F. Anthis, appeal. Judgment affirmed as to Lilah Tiger et al. interveners, and reversed as to Austin F. Anthis, cross-petitioner.

Foreman & Simms, for plaintiff in error Austin F. Anthis.

J. S. Severson, for interveners.

McDougal, Allen & Pryor, for defendants in error.

Opinion by PINKHAM, C. This action was instituted by C. H. Drew and others against Willard Morrow and others in the district court of Creek county for partition of 160 acres of land allotted to one Tom Fish, deceased, and an accounting for rents and profits, the said plaintiffs claiming that they were maternal heirs of said Tom Fish and as such entitled to a one-half interest in said estate. Subsequently, the interveners, Lilah Tiger and others, filed their petition of intervention, alleging that they were the paternal heirs of Tom Fish and claiming interests against the contentions of both the plaintiffs and defendants.

On the trial of the case the district court rendered judgment in favor of the defendants Willard Morrow and others, and against the plaintiffs Drew and others, and against the various interveners, Lilah Tiger and others, and against the defendant cross-petitioner Austin F. Anthis. The defendant Austin F. Anthis and the interveners, Lilah Tiger and others, have appealed.

Counsel for the interveners, in their brief, state that the sole question for determination by the trial court was, Who were the heirs of Tom Fish, in so far as the rights of the interveners are concerned, and it is contended on behalf of Lilah Tiger and others, interveners, that the finding and decision of the trial court is against the weight of the evidence and not sustained by sufficient evidence, and that the finding and judgment of the court are contrary to law.

It is earnestly contended that the uncontradicted testimony of the witnesses who testified as to relationship, is to the effect that the interveners were relatives of Tom Fish, deceased, and therefore entitled to share in his estate.

The facts as disclosed by the record show that Tom Fish was a duly enrolled Creek citizen by blood. He died on or about the

1st day of May, 1906, at Muskogee, Okla., where he was temporarily residing, intestate without issue or descendants of issue. During his lifetime, on October 5, 1899, there was allotted to him the land in controversy, the title to which land was in the said Tom Fish at the time of his death, The question as to who were the heirs of Tom Fish was one of the matters litigated and determined by the district court. The evidence shows that Tom Fish was the son of a Creek mother, Totothlike, and a Creek father called Long Fish. Long Fish had a brother named Coweta Micco and a sister named Tunfunahke. Coweta Micco had a daughter named Susan K. Childers, and Tunfunahke had a son named Leonard Gibson, who died survived by a daughter named Annie Childers, so that at the time of Tom Fish's death it appears he was survived by a first cousin, Susan K. Childers, and a second cousin, Annie Childers. The above family history is that relied upon by both plaintiff in error, Austin F. Anthis, and the defendants in error, Willard Morrow and others.

It was the contention of the interveners, Lilah Tiger and others, that Long Fish, the father of Tom Fish, had other brothers and sisters, whose descendants were Lilah Tiger and the other interveners. The plaintiffs in the court below, C. H. Drew and others, rested their claim upon the contention that they were the heirs on the side of the mother of Tom Fish. The trial court held that the contention of the plaintiffs, Drew and others, was not established, and that the title is in the grantees from the paternal heirs.

It further appears that Susan K. Childers, claiming to be the owner of the land in question, applied to the Indian office at Muskogee to sell the same, and after certain formalities were complied with, the land was purchased by the defendant William Morrow for the sum of $2,260, and on August 30, 1907, the said Susan K. Childers and her husband, M. B. Childers, executed their warranty deed conveying the land in question to William Morrow for said sum of money, which deed was subsequently duly approved by the proper officials in the office of the Secretary of the Interior, and delivered to the grantee. On November 18, 1918, the defendant William Morrow executed a warranty deed conveying a one-third undivided interest to Willard Morrow, defendant in error, and on the same date executed a warranty deed conveying an undivided one-third interest to said lands. to Rodney Morrow, defendant in error. It fur-

ther appears that the defendant Morrow went into possession of the lands in controversy in the year 1907, and further that the plaintiffs in the original case, C. H. Drew and others, and interveners, Lilah Tiger and others, and all of the defendants, except the Morrows, were out of possession and have never been in possession of the lands in question.

While the judgment of the court was general, no findings of fact having been made, a careful examination of the testimony of the witnesses on behalf of the interveners leads to the conclusion that the proof was clearly insufficient to show heirship of the interveners.

The plaintiffs and interveners attempted to prove that one Long Fish, the father of the allottee, had four sisters, maternal aunts of the allottee, namely Tin-fin-i-nache, Louisa, Sallie, and Linda. These interveners claim as descendants of Louisa and Sallie. The witness Thomas Tiger purports to show nothing except what Billy Tiger, his father and husband of Lilah Tiger, had told the said Thomas Tiger from time to time as to the relation between Coweta Micco, Tom Fish, and others. All of the testimony as to what Billy Tiger had told his son, the witness Thomas Tiger. is of a very unsatisfactory character, and is rendered practically valueless when considered in connection with the defendants Morrows' Exhibit 5, incorporated in the case-made. which is proof of heirship of Tom Fish, the allottee, made by Billy Tiger, the purported declarant, and Lilah Tiger, the intervener, in which they state that Susie K. Childers and Annie Gibson were the sole heirs of Tom Fish, deceased. The intervener, Lilah Tiger, testified as to what she had been told with respect to her relationship to Tom Fish, the deceased, but her testimony is weakened, if not destroyed, by her affidavit and that of her husband in the proof of heirship of Tom Fish, the allottee, heretofore referred to. We conclude upon this branch of the case that the finding of the trial court against the interveners is amply sustained by the evidence.

It is contended that the affidavit of Lilah Tiger was incompetent, and that the interveners' objection to its admission should have been sustained. We think the statement of the intervener, as made in her affidavit, was competent; but aside from that, her testimony, taken in connection with the testimony of other witnesses on behalf of the interveners, was wholly insufficient to establish their claim of heirship.

The controversy between the plaintiff in error Austin F. Anthis and the defendants· in error Willard Morrow and others, presents the sole question as to which of the county courts of Creek and Tulsa counties had jurisdiction to approve the deeds of the heirs of Tom Fish, deceased.

The record discloses that on December 9, 1919, the said Annie McIntosh, nee Childers, joined by her husband, George McIntosh, made, executed, and delivered to Austin F. Anthis a warranty deed conveying an undivided one-half interest in and to the lands involved for the sum of $1,500, which was paid to her, and on the same day said deed was approved by the county court of Creek county, Okla. On March 13, 1920, this same Annie McIntosh executed a deed, in which she was joined by her husband, George McIntosh, purporting to convey the same premises to the defendants in error William Morrow, Rodney Morrow, and Willard Morrow, for a purported consideration of $500. On March 15, 1920, this deed was submitted for approval to the county court of Creek county and was duly approved; and more than two years afterward, on May 27, 1922, this same deed was submitted to the county court of Tulsa county, Okla., and was duly approved. By virtue of his purchase from Annie McIntosh, formerly Childers, the plaintiff in error Austin F. Anthis claims to be the owner of an undivided one-half interest in the lands in controversy, and the trial court, by inference, held that Annie Childers was the heir of an undivided one-half interest in this property.

The findings of the trial court are to the effect that the plaintiffs Drew and others and the interveners failed to establish their claim, but that as to the controversy between Austin F. Anthis and the Morrows, the question of the place of residence of Tom Fish at the time of his death was material, but the trial court decided this proposition in favor of the Morrows.

It is contended by the plaintiff in error Austin F. Anthis that the residence of Tom Fish, at the time of his death, was in Creek county, and as Annie McIntosh, nee Childers, was the owner of an undivided one-half interest in said property, her deed, approved by the county court of Creek county, vested good title to an undivided one-half interest in Austin F. Anthis. The trial court held that Tom Fish was a resident of Tulsa county at the time of his death, and that therefore the subsequent deed of Annie Childers to the Morrows, approved in Tulsa county, conveyed good title to her undivided one-half interest to the said Morrows. It is urged on behalf of plaintiff in error Anthis that the great preponderance of the evidence shows that Tom Fish was a resident of Creek county at the time of his death, and that the decision of the court on this question is against the weight of the evidence and is not sustained by any sufficient evidence.

The trial court made no special findings of fact, and it does not appear from the journal entry that Annie McIntosh, the grantor of Austin F. Anthis, was the owner of an undivided one-half interest in the land in question. That fact, however, is clearly apparent from the record, which shows that there was no controversy between the defendants in error, the Morrows, and the plaintiff in error Anthis on this point. The only controversy between the Morrows and Anthis toward which all of their testimony was directed was as to whether Tom Fish died a resident of Creek county or Tulsa county, and whether the Morrows or Anthis got title to an undivided one-half interest in the land by the respective deeds of Annie McIntosh. In rendering his decision the trial court found no controverted question to dispose of as between the Morrows and Anthis, except that as to the question of the residence of Tom Fish.

Under the provisions of section 1080, C. S. 1921, jurisdiction is conferred upon the county courts of this state to approve the deeds of full-blood Indians conveying their inherited lands as now provided by the laws of the United States.

The county court of Creek county approved the deed of Annie McIntosh, nee Childers, to Austin F. Anthis, plaintiff in error, on the 9th day of December, 1919. The fact that the county court of Creek county took jurisdiction to approve this deed raises the presumption that Tom Fish died a resident of that county. The testimony of witnesses offered on the part of plaintiff in error Anthis was to the effect that up to the time of his death Tom Fish continued to reside in Creek county at the home of one Noble Perryman; that he was living with the said Perryman in what is now Creek county as far back as 1891. The evidence further shows that in 1899, when Tom Fish made application for allotment of the land in controversy, he gave Bristow, a town now in Creek county, as his postoffice. He stated at that time that the land on which he desired to file was improved by fencing around 80 acres, and by a house which was occupied by tenants who rented from him,

and that it was his purpose to make this place his home.

When existence of a residence at a certain place at a certain time has been established, it will be presumed to have continued until the contrary is shown. State ex rel. Phelps v. Jackson, 79 Vt. 504, 65 Atl. 657.

The testimony on the part of defendants in error Morrows is to the effect only that Tom Fish worked at the home of one Billy Anderson in Tulsa county at intervals over a period of two or three years, where he performed the usual duties of a farm hand about the place. It appears that he left Anderson's in Tulsa county and finally died in Muskogee county.

It further appears that Tom Fish was a single man, about 28 years of age. He had no family, no wife, and no issue, and it appears that he had not settled down to the cultivation of his own land but rented the same, and that he was often seen and known about the home of Noble Perryman in Creek county, where his allotment was located; and that while he temporarily sojourned in different places, he usually returned to his home in Creek county.

"Merely going away temporarily on business or pleasure and without a set purpose to abandon the former residence is not enough." 2 R. C. L. 818.

"Temporary absence, with a continuous intent to return, will not deprive one of his residence, though it extend through a series of years. Cooley Const. Lim. 600; Fry's Election Case, 71 Pa. 302, 10 Am. Rep. 698." Langhammer v. Munter (Md.) 27 L. R. A. 330.

In the instant case, it being uncontroverted that Tom Fish was a resident of Creek county by his own declaration, when he made application for his allotment, and his residence for many years in Creek county, in order to change his residence from Creek county to Tulsa county, it must be made to appear that he left the county of his residence for Tulsa county with the intention of changing his residence, and we are unable to discover any evidence to sustain the judgment of the court that his residence was in Tulsa county.

There is no contention that the plaintiff in error Anthis did not in good faith purchase from Annie McIntosh her undivided one-half interest in the land in question and paid her $1,500 therefor; that her deed to the plaintiff in error Anthis was submitted for approval to the county court of Creek county, which Anthis had a right to believe was the court having jurisdiction for that purpose.

Counsel for defendants in error Morrows, in support of the judgment of the district court, raise the question of the statute of limitations as a bar to a recovery by plaintiff in error Anthis. This issue was raised in the pleadings of the defendants in error Morrows, but the record discloses that on the trial of the case it was abandoned. Counsel for defendants in error specifically stated, during the trial of the case, that they were not pleading the statute of limitations against the plaintiff in error Anthis, and further the record discloses that that question was not considered by the trial court. However, the contention of counsel for defendants in error that Anthis' right to be heard is barred by the provisions of sections 183 and 184, C. S. 1921, is not, we think, tenable. The theory is that while the statute of limitations did not run against Annie McIntosh when she sold her interest to the plaintiff in error Anthis, it was not the 15 year limitation that started to run against Austin F. Anthis, the purchaser, but that he was protected only by the provision of section 184, supra, providing that the person under a legal disability must bring his action within two years after the disability is removed. This contention cannot be sustained. The plaintiff in error Anthis' right is governed by the provision of the statute of limitations giving him 15 years within which to bring his action.

The record shows that Annie McIntosh did, on the 9th day of December, 1919, convey her undivided interest in the lands in controversy to Austin F. Anthis, and that Anthis commenced his action on the 16th day of October, 1923, when he filed his answer and cross-petition.

It is well settled by the decisions of this court that the statute of limitations does not begin to run against an action concerning restricted Indian lands until the restrictions against alienation have been removed. Sandlin v. Barker, 95 Okla. 113, 218 Pac. 519.

Counsel for the Morrows say in their brief that the case of Sandlin v. Barker, supra, and cases supporting the same, have no application "for the reason that the defendants Morrow are holding under a deed wholly sponsored by the federal government and on representations of governmental agents that

the entire title was conveyed to the Morrows."

The deed of Susan K. Childers was approved by the Secretary of the Interior by authority of the provisions of section 22 of the Act of Congress of April 26, 1906, providing:

"That the adult heirs of any deceased Indian of either of the Five Civilized Tribes. whose selection has been made, or to whom a deed or patent has been issued for his or her share of the land of the tribe to which he or she belongs or belonged, may sell and convey the lands inherited from such decedent. * * * All conveyances made under this provision by heirs who are full-blood Indians are to be subject to the approval of the Secretary of the Interior, under such rules and regulations as he may prescribe."

We observe nothing in this statute showing an intention on the part of Congress to commit to the Secretary of the Interior authority to determine the heirs of deceased Indians in connection with their conveyances, or the extent of the interest conveyed by them.

We conclude from an examination of the entire record that the judgment of the lower court should be reversed with directions to enter judgment in favor of the defendant Austin F. Anthis for an undivided one-half interest in the land in controversy.

· By the Court: It is so ordered.

Note.—See under (1) 4 C. J. p. 877, § 2853 (Anno). (2) 19 C. J. p. 431, § 66. (3) 19 C. J. p. 423, §50. (4) 31 C. J. p. 516, § 79 (Anno). See under (2, 3) 9 R. C. L. pp. 554, 555: 2 R. C. L. Supp. 834; 4 R. C. L. Supp. 614.